1  ANDREW R. LIVINGSTON (SBN 148646)
   alivingston@orrick.com
2  RACHEL CAPLER (SBN 307582)
   rcapler@orrick.com
3  ORRICK, HERRINGTON & SUTCLIFFE LLP
   The Orrick Building
4  405 Howard Street
   San Francisco, CA  94105-2669
5  Telephone:     +1 415 773 5700
   Facsimile:     +1 415 773 5759
6
   Attorneys for Defendant
7  DATAROBOT, INC.

8
                  UNITED STATES DISTRICT COURT
9
                NORTHERN DISTRICT OF CALIFORNIA
10

11

| | |
|---|---|
| RAQUEL VAZQUEZ, | Case No. 3:22-cv-07619-LB |
| Plaintiff, | **DEFENDANT DATAROBOT, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS** |
| v. | |
| DATAROBOT, INC.; DAN WRIGHT; and DOES 1 through 20, inclusive, | Judge:  Hon. Laurel Beeler<br>Crtrm:  B<br>Date:    February 2, 2023<br>Time:   9:30 a.m. |
| Defendants. | |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ............................................................................................. 1

II.  ISSUES TO BE DECIDED ............................................................................. 2

III. RELEVANT FACTUAL BACKGROUND ...................................................... 3

IV.  LEGAL STANDARDS .................................................................................... 4

    A.   The Standard On A Motion To Dismiss ................................................. 4

    B.   Heightened Pleading Requirements For Alleging Fraud ........................ 5

V.   ARGUMENT ................................................................................................... 6

    A.   Plaintiff's Fraud Claims (Counts 1-4) Are Not Sufficiently Plead As To The Details Of The Alleged Representations ............................... 6

    B.   Plaintiff's Fraud Claims (Counts 1-4) Also Fail Because She Cannot Show Detrimental Reliance As A Matter Of Law ............................ 8

    C.   Plaintiff's Promissory Fraud Claim (Count 1) Additionally Fails Because Plaintiff Does Not Allege An Actionable Promise Or Requisite Intent ................ 9

        1.   Plaintiff Fails To Allege That DataRobot Made Any Actionable Promises Regarding A Material Fact ...................... 10

        2.   Plaintiff Has Not Pled Any Facts To Show That DataRobot Intended Not To Perform At The Time Of The Alleged Promise ......... 10

    D.   Plaintiff's Intentional Misrepresentation Claim (Count 2) Additionally Fails Because Plaintiff Does Not Allege An Actionable Representation ............. 12

    E.   Plaintiff's Fraudulent Concealment Claim (Count 3) Additionally Fails Because Plaintiff Has Not Pled That DataRobot Owed Her A Duty Of Disclosure ................ 13

    F.   Plaintiff's Negligent Misrepresentation Claim (Count 4) Additionally Fails Because Plaintiff Does Not Allege An Actionable Representation And Her Claim Is Premised On A Future Promise ................ 14

    G.   Plaintiff's Intentional Infliction Of Emotional Distress Claim (Count 9) Fails On Multiple Grounds ................ 15

        1.   Plaintiff Has Not Pled Extreme And Outrageous Conduct ...................... 15

        2.   Plaintiff Has Not Pled Severe Or Extreme Emotional Distress ............... 16

        3.   Plaintiff's Claim Is Barred By Workers' Compensation Exclusivity ....... 17

    H.   Plaintiff Has Not Plausibly Pled Her Claim For Punitive Damages .................... 18

VI.  CONCLUSION ............................................................................................... 19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Albrecht v. Lund*,
   845 F.2d 193 (9th Cir. 1988) ............................................................................. 5

*Alcorn v. Anbro Eng., Inc.*,
   2 Cal. 3d 493 (1970) ........................................................................................ 15

*Antl v. AGA Serv. Co.*,
   No. 2:22-cv-00504-KJM-AC, 2022 WL 16722221 (E.D. Cal. Nov. 4, 2022) ...................... 11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................. 4, 5, 18

*Baldwin Park Unified Sch. Dist. v. Genesis Mgmt. & Ins. Servs. Corp.*,
   No. CV 16-9349-DMG (EX), 2017 WL 5635018 (C.D. Cal. July 10, 2017) ...................... 10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................ 18

*Branch v. Homefed Bank*,
   6 Cal. App. 4th 793 (1992) ............................................................................... 18

*Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
   637 F.3d 1047 (9th Cir. 2011) ...................................................................... 5, 6, 7

*Cansino v. Bank of Am.*,
   224 Cal. App. 4th 1462 (2014) .......................................................................... 12

*Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund*,
   24 Cal. 4th 800 (2001) ..................................................................................... 17

*Davies v. Broadcom Corp.*,
   130 F. Supp. 3d 1343 (C.D. Cal. 2015) ................................................................ 8

*Depot, Inc. v. Caring for Montanans, Inc.*,
   915 F.3d 643 (9th Cir. 2019) ............................................................................. 6

*Dipaola v. JPMorgan Chase Bank*,
   No. C 11-2605 SI, 2011 WL 3501756 (N.D. Cal. Aug. 10, 2011) ............................... 18

*Evenfe v. Esalen Inst.*,
   No. 15-CV-05457-LHK, 2016 WL 3965167 (N.D. Cal. July 24, 2016) ........................ 13

*Fowler v. Varian Assocs.*,
   196 Cal. App. 3d 34 (1987) ............................................................................... 15

*Graham v. Bank of Am., N.A.*,
    226 Cal. App. 4th 594 (2014).......................................................................................... 12, 13

*Haley v. Cohen & Steers Cap. Mgmt., Inc.*,
    871 F. Supp. 2d 944 (N.D. Cal. 2012) ................................................................................. 16

*Hall v. FedEx Freight, Inc.*,
    No. 1:13-cv-01711-SKO, 2015 WL 574177 (E.D. Cal. Feb. 11, 2015) ................................ 10

*Hatfield v. DaVita Healthcare Partners, Inc.*,
    No. C 13-5206, 2015 WL 106632 (N.D. Cal. Jan. 7, 2015) ................................................. 17

*Hughes v. Pair*,
    46 Cal. 4th 1035 (2009) ............................................................................................... 15, 16

*Immobiliare, LLC v. Westcor Land Title Ins. Co.*,
    424 F. Supp. 3d 882 (E.D. Cal. 2019) ................................................................................. 13

*Kaylor v. Crown Zellerbach, Inc.*,
    643 F.2d 1362 (9th Cir. 1981).............................................................................................. 11

*Kelley v. Corrections Corp. of Am.*,
    750 F. Supp. 2d 1132 (E.D. Cal. 2010) ............................................................................... 18

*LA Lakers, Inc. v. Fed. Ins. Co.*,
    869 F.3d 795 (9th Cir. 2017)................................................................................................. 5

*Landucci v. State Farm Ins.*,
    65 F. Supp. 3d 694 (N.D. Cal. 2014) ................................................................................... 17

*Lawler v. Montblanc N. Am., LLC*,
    704 F.3d 1235 (9th Cir. 2013).......................................................................................15, 17

*Lee v. S. of Mkt. Health Ctr.*,
    No. 19-CV-06482-LB, 2020 WL 2219032 (N.D. Cal. May 7, 2020).................................... 16

*Louis v. Nailtiques Cosmetic Corp.*,
    No. CV 09-242-VBF(JTLx), 2009 WL 10681099 (C.D. Cal. Oct. 19, 2009),
    *aff'd* 423 Fed. App'x 711 (9th Cir. 2011) ...................................................................... 10, 12

*In re Lui*,
    646 Fed. App'x 571 (9th Cir. 2016)................................................................................... 5, 7

*Magpali v. Farmers Group, Inc.*,
    48 Cal. App. 4th 471 (1996)................................................................................................ 14

*Marketing West, Inc. v. Sanyo Fisher (USA) Corp.*,
    6 Cal. App. 4th 603 (1992).................................................................................................. 14

*Mat-Van, Inc. v. Sheldon Good & Co. Auctions, LLC*,
   No. CV 07-CV-912, 2007 WL 2206946 (S.D. Cal. July 27, 2007)...................................... 6, 11

*McCoy v. Pacific Maritime Ass'n*,
   216 Cal. App. 4th 283 (2013) ............................................................................................... 16

*Miklosy v. Regents of the Univ. of Calif.*,
   44 Cal. 4th 876 (2008) ......................................................................................................... 16

*Moncada v. West Coast Quartz Corp.*,
   221 Cal. App. 4th 768 (2013)............................................................................................... 14

*OCM Principal Opportunities Fund v. CIBC World Markets Corp.*,
   157 Cal. App. 4th 835 (2007) ................................................................................................. 8

*Opperwall v. State Farm Fire & Cas. Co.*,
   No. 17-CV-07083-YGR, 2018 WL 1243085 (N.D. Cal. Mar. 9, 2018) .................................. 18

*Patriot Sci. Corp. v. Korodi*,
   504 F. Supp. 2d 952 (S.D. Cal. 2007) ..................................................................................... 8

*Reid v. Moskovitz*,
   208 Cal. App. 3d 29 (1989) .................................................................................................. 18

*Rochlis v. Walt Disney Co.*,
   19 Cal. App. 4th 201 (1993) ............................................................................................. 9, 10

*Rossberg v. Bank of Am., N.A.*,
   219 Cal. App. 4th 1481 (2013) ............................................................................................... 9

*Rubinstein v. SAP AG*,
   No. C 11-06134 JW, 2012 WL 726269 (N.D. Cal. Mar. 1, 2012) .......................................... 9

*Semegen v. Weidner*,
   780 F.2d 727 (9th Cir. 1985) .................................................................................................. 7

*Sollberger v. Wachovia Sec. LLC*,
   No. SACV 09-0766, 2010 WL 2674456 (C.D. Cal. June 30, 2010) ...................................... 16

*Stanislaus Food Prods. Co. v. USS-POSCO Indus.*,
   No. CV F 09-0560 LJO SMS, 2010 WL 3521979 (E.D. Cal. Sept. 3, 2010) ........................ 16

*Stockton Mortgage, Inc. v. Tope*,
   233 Cal. App. 4th 437 (2014)............................................................................................... 15

*Swartz v. KMPG LLP*,
   476 F.3d 756 (9th Cir. 2007) .................................................................................................. 5

*Teed v. Chen*,
   No. 22-cv-02862-CRB, 2022 WL 16839496 (N.D. Cal. Nov. 9, 2022) .................................. 8

NOTICE OF MOTION AND MOTION TO
DISMISS [3:22-cv-07619-LB]

*Telesaurus VPC, LLC v. Power*,
   623 F.3d 998 (9th Cir. 2010) ................................................................................. 5

*Turner v. Anheuser-Busch, Inc.*,
   7 Cal. 4th 1238 (1994) ....................................................................................... 9

*Universal Studios Int'l B.V. v. Ent. Television Network FZE*,
   2009 WL 10675950, 2009 WL 10675950 (C.D. Cal. Aug. 25, 2009) ................... 10

*Vasquez v. Franklin Mgmt. Real Estate Fund, Inc.*,
   222 Cal. App. 4th 819 (2013) ........................................................................... 15

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ............................................................................ 5

*Wehlage v. EmpRes Healthcare, Inc.*,
   791 F. Supp. 2d 774 (N.D. Cal. 2011) ........................................................... 5, 11

*White v. J.P. Morgan Chase, Inc.*,
   167 F. Supp. 3d 1108 (E.D. Cal. 2016) ............................................................. 15

*Yastrab v. Apple Inc.*,
   173 F. Supp. 3d 972 (N.D. Cal. 2016) ........................................................... 8, 12

*Yau v. Santa Margarita Ford, Inc.*,
   229 Cal. App. 4th 144 (2014) ...................................................................... 16, 17

**Statutes**

Cal. Civ. Code § 3294(a) ...................................................................................... 18

Cal. Lab. Code § 3600(a) ...................................................................................... 17

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ............................................................ 1, 3

Federal Rule of Civil Procedure 8(a)(2) ................................................................. 3

Federal Rule of Civil Procedure 9(b) ............................................................ *passim*

1

**NOTICE OF MOTION AND MOTION**

2

TO PLAINTIFF AND HER COUNSEL OF RECORD:

3

PLEASE TAKE NOTICE that on February 2, 2023 at 9:30 a.m. or as soon thereafter as

4

the matter may be heard, before the Honorable Laurel Beeler, Courtroom B, United States District

5

Court, Northern District of California, located at 450 Golden Gate Ave., San Francisco, CA

6

94102, Defendant DataRobot, Inc. will move the Court for an Order dismissing from Plaintiff

7

Raquel Vazquez's Complaint Counts One (promissory fraud), Two (intentional

8

misrepresentation), Three (fraudulent concealment), Four (negligent misrepresentation), and Nine

9

(intentional infliction of emotional distress), and the request for punitive damages, all for the

10

failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil

11

Procedure 12(b)(6).  This Motion is based on this Notice of Motion, the accompanying

12

Memorandum of Points and Authorities, the complete pleadings and records on file herein, any

13

matters of which the Court may or must take judicial notice, and such other evidence and

14

arguments as may be presented at the hearing on this Motion.

15

**MEMORANDUM OF POINTS AND AUTHORITIES**

16

**I.      INTRODUCTION**

17

This is an ordinary wrongful termination action masquerading as a fraud lawsuit.  Indeed,

18

Plaintiff, like so many employees in the technology sector in recent months, lost her job as part of

19

a reduction in force.  Unhappy with Defendant DataRobot, Inc.'s ("DataRobot") decision to let

20

her go, Plaintiff launched this action to attack her selection for layoff.  However, in an obvious

21

attempt to sensationalize an otherwise garden-variety employment case, Plaintiff seeks to paint

22

herself as the victim of deceit by asserting four overlapping fraud claims against DataRobot,

23

without any supporting facts or meaningful attempt to plead the essential elements of her claims.

24

Instead, she leverages rumor, gossip, and innuendo and puts forth hopelessly vague and

25

conclusory allegations without the requisite factual basis.

26

The thrust of Plaintiff's fraud claims appears to be that DataRobot supposedly

27

fraudulently induced her into leaving her job at Cisco and accepting a position at DataRobot in

28

May 2021.  The Court should dismiss these claims for a multitude of reasons.  First, and most

1    glaringly, Plaintiff's fraud claims fail to comport with Rule 9(b)'s heightened pleading

2    requirements for fraud.  While Rule 9(b) requires specific details as to the "who, what, when,

3    where, and how" of the alleged fraud, Plaintiff's claims are supported by a few generalities at

4    best, but otherwise are wanting.  Even if Plaintiff could satisfy Rule 9(b)'s high standard, as a

5    matter of law she cannot plead detrimental reliance, a necessary element for each of her fraud

6    claims, because she allegedly discovered DataRobot's so-called "misrepresentations" but

7    nevertheless chose to remain in her position for over a year.

8         Setting aside that Plaintiff's fraud claims are deficiently vague and incurable as a matter

9    of law, there are additional grounds to dismiss each one.  Plaintiff's promissory fraud claim fails

10   because she does not identify an actionable promise or sufficiently plead scienter.  Plaintiff's

11   negligent and intentional misrepresentation claims both fail because they are premised on

12   opinions or predictions as to future events or value, not statements as to past or existing material

13   facts.  Plaintiff's negligent misrepresentation claim fails for the additional reason that there is no

14   such thing as a "negligent promise" under California law.  And while Plaintiff cleverly pled a

15   fraudulent concealment claim to try and sidestep the obvious deficiencies in her other fraud

16   claims, DataRobot never owed her any duty of disclosure.

17        Just as Plaintiff has utterly failed to adequately plead her fraud claims, her intentional

18   infliction of emotional distress claim consists of nothing more than a formulaic recitation of the

19   elements without any supporting factual allegations.  Likewise, Plaintiff's request for punitive

20   damages is premised on conclusory buzzwords without any corresponding facts to support it.

21        Plaintiff's claims for fraud, intentional infliction of emotional distress, and punitive

22   damages are all riddled with legal and factual defects.  Plaintiff's inability to plead facts to

23   support the basic elements of these claims, as well as settled law, make clear that they are

24   meritless and should all be dismissed.

25   **II.      ISSUES TO BE DECIDED**

26        Whether Plaintiff's causes of action for promissory fraud (Count One), intentional

27   misrepresentation (Count Two), fraudulent concealment (Count Three), negligent

28   misrepresentation (Count Four), and intentional infliction of emotional distress (Count Nine), and

NOTICE OF MOTION AND MOTION TO
DISMISS [3:22-cv-07619-LB]

her claim for punitive damages should be dismissed pursuant to Federal Rules of Civil Procedure 8(a)(2), 12(b)(6), and/or 9(b).

## III.    RELEVANT FACTUAL BACKGROUND

Plaintiff filed the instant action in state court, which DataRobot removed to this Court.  In her Complaint, Plaintiff asserts that she was employed by DataRobot from May 1, 2021 until she was discharged (along with 69 other employees) as part of a reduction in force in May 2022. (Compl. ¶¶ 25, 31.)  Plaintiff's Complaint contains four fraud-based claims against DataRobot and its former CEO Dan Wright ("Wright"): promissory fraud, intentional misrepresentation, fraudulent concealment, and negligent misrepresentation.[1]  While Plaintiff's allegations are hopelessly vague, the nature of these overlapping fraud claims appears to be based on Plaintiff's contention that DataRobot made some representations about the company's potential for an IPO in 2021, which she allegedly relied upon in deciding to leave her job at Cisco and accept employment at DataRobot.  (Compl. ¶ 25.)  Plaintiff's fraud claims are based on a handful of vague opinions and predictions about the future that were allegedly made by Wright and other unidentified individuals.

As pled in the Complaint, Wright became DataRobot's CEO after its previous CEO, Jeremy Achin, left the company in February 2021.  (Compl. ¶ 12.)  Plaintiff alleges that, within "days of becoming CEO," Wright allegedly said at company meetings "that DataRobot was ready and able to fast-track an IPO by the end of 2021."  (Compl. ¶ 13.)  Plaintiff further alleges that, at an unspecified time and place and to unspecified recipient(s), Wright allegedly repeated that "based upon his review of the Company's current finances . . . annual recurring revenue was going to undergo remarkable growth: 80% to $255 million in 12 months ending in January 2022, 70% to $435 million in the 12 months to Jan. 31, 2023, and 61% to $700 million in the 12 months ending in January 2024."  (Compl. ¶ 13.)  Plaintiff does not allege that she was a party to any of

---

[1] Plaintiff's Complaint asserts the following additional claims against DataRobot arising from her employment relationship with it: (1) discrimination based on her age, gender, race/ethnicity, disability, and veteran status, (2) failure to prevent discrimination, (3) whistleblower retaliation, and (4) wrongful termination in violation of public policy.  While all of Plaintiff's claims lack merit, DataRobot's Motion to Dismiss is limited to Plaintiff's four fraud claims (Counts One through Four), her claim for intentional infliction of emotional distress (Count Nine), and her request for punitive damages.

1   Wright's alleged statements.  And finally, Plaintiff alleges that sometime in March of 2021,

2   Wright allegedly instructed unnamed "recruiters and hiring agents" to provide the following

3   information about DataRobot: (1) that "DataRobot's finances looked solid for an IPO" and to use

4   the expression "fast tracking an IPO," and (2) that "the imminent IPO would make employees

5   incredibly wealthy and/or provide life-changing wealth."  (Compl. ¶ 18.)  The Complaint makes

6   no mention of what these recruiters and hiring agents were to do with this information, and it

7   never identifies any potential or actual recipients of such information.

8        Plaintiff asserts that she was recruited and interviewed by DataRobot's senior executive

9   leaders and internal recruiters between April 14-May 1, 2021.  (Compl. ¶ 11.)  Plaintiff alleges

10   that she "was provided a falsely rosy picture of everything at DataRobot," including that the

11   company was financially robust, that DataRobot was making steady progress towards an IPO, that

12   the IPO would launch later in 2021 and was being "fast tracked," that the value of her initial

13   equity grant would increase in the future, and that DataRobot needed her skills and experience for

14   the long-term.  (Compl. ¶ 21(c)-(n).)  Surprisingly, Plaintiff offers only a single direct quote as to

15   what she allegedly was specifically told: after Plaintiff allegedly asked a recruiter "[h]ow sure are

16   you that you'll go IPO?" the recruiter responded, "[o]ur CEO is backing this and the leadership is

17   doubling down.  Your skill set is exactly what we need as we go IPO."  (Compl. ¶ 21(a).)

18        Plaintiff now contends that, because DataRobot's alleged prediction that it would have an

19   IPO in late 2021 did not come to fruition, these statements necessarily constitute fraud.  But

20   Plaintiff cannot plead fraud by hindsight, and the mere existence of a difference between what

21   DataRobot allegedly told Plaintiff in May 2021 and the later circumstances is not evidence of

22   potential fraud.

23   **IV.    LEGAL STANDARDS**

24        **A.    The Standard On a Motion to Dismiss**

25        A complaint must contain sufficient factual allegations to "state a claim for relief that is

26   plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v.*

27   *Twombly*, 550 U.S. 544, 570 (2007)).  The plausibility standard requires "more than a sheer

28   possibility that a defendant has acted unlawfully."  *Id.* at 678 (citing *Twombley*, 550 U.S. at 557).

1   Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops

2   short of the line between possibility and plausibility of entitlement to relief." *Id.* (citing

3   *Twombley*, 550 U.S. at 557) (internal marks omitted).  Dismissal is appropriate "where there is no

4   cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal

5   theory." *LA Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 800 (9th Cir. 2017).  The court may deny

6   leave to amend where it determines that the "allegation of other facts consistent with the

7   challenged pleading could not possibly cure the deficiency." *Telesaurus VPC, LLC v. Power*, 623

8   F.3d 998, 1003 (9th Cir. 2010) (citation omitted); *see also Albrecht v. Lund*, 845 F.2d 193, 195-

9   96 (9th Cir. 1988) (affirming dismissal of the plaintiff's fraud claims without leave to amend

10   where the alleged misrepresentation concerned the defendant's own opinions, which could not be

11   cured by amendment).

12             **B.**    **Heightened Pleading Requirements For Alleging Fraud**

13        In addition to plausibility, claims sounding in fraud must also allege *specific* facts to

14   support each element of the claim.  The Complaint "must state with particularity the

15   circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  Allegations of fraud "must be

16   accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v.

17   Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).  Because fraud claims "involve a

18   serious attack on character" they must be pled with specificity. *Cafasso v. Gen. Dynamics C4

19   Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011); *see also In re Lui*, 646 Fed. App'x 571, 573 (9th

20   Cir. 2016) ("Rule 9(b) demands that allegations of fraud be specific enough to give defendants

21   notice of the particular misconduct . . . so that they can defend against the charge and not just

22   deny that they have done anything wrong") (citation omitted).  Rule 9(b)'s heightened pleading

23   standard "does not allow a complaint to merely lump multiple defendants together but require[s]

24   plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform

25   each defendant separately of the allegations surrounding his alleged participation in the fraud."

26   *Swartz v. KMPG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (internal marks and citation omitted).

27   Allegations of fraud based "on information and belief" do not satisfy Rule 9(b) unless they are

28   regarding matters peculiarly within the defendant's knowledge, in which case the plaintiff must

1  also state the facts upon which the belief is founded.  *Wehlage v. EmpRes Healthcare, Inc.*, 791 F.

2  Supp. 2d 774, 789 (N.D. Cal. 2011) (citing *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433,

3  1439 (9th Cir. 1987)).

4  **V.    ARGUMENT**

5       **A.    Plaintiff's Fraud Claims (Counts 1-4) Are Not Sufficiently Plead As to the**
             **Details of the Alleged Representations**

6

7       Plaintiff's claims for promissory fraud (Count One), intentional misrepresentation (Count

8  Two), fraudulent concealment (Count Three), and negligent misrepresentation (Count Four) all

9  sound in fraud and must be pled with sufficient particularity.  Rule 9(b) requires specific

10  allegations of "the who, what, when, where, and how of the misconduct charged, as well as what

11  is false or misleading about [the purportedly fraudulent] statement and why it is false."  *Cafasso*,

12  637 F.3d at 1055 (citation omitted).

13       As an initial matter, Plaintiff's Complaint wholly fails to identify: (1) *who* made the

14  alleged misrepresentations to her, and (2) *who* received the alleged misrepresentations by Wright.

15  First, Plaintiff only generically alleges that it was individuals who interviewed her or were

16  involved in her hiring that allegedly made fraudulent statements to her.  (Compl. ¶¶ 20-21.)  But

17  Plaintiff cannot maintain a claim for fraud without naming names.  Plaintiff's outright failure to

18  identify a single person who purportedly made such a statement is plainly insufficient under Rule

19  9(b), as it is well-settled that "[c]orporations speak through agents and, therefore plaintiffs must

20  identify the agent who made the fraudulent statement . . ."  *Mat-Van, Inc. v. Sheldon Good & Co.*

21  *Auctions, LLC*, No. CV 07-CV-912 IEG-BLM, 2007 WL 2206946, at *5 (S.D. Cal. July 27,

22  2007) (granting motion to dismiss where the complaint did not identify the speaker, and thus did

23  "not place defendants on notice as to who in their organizations may have made the statements").

24  Moreover, although Plaintiff asserts that Wright made certain vague statements, she fails to

25  identify a single recipient of those alleged statements.  (Compl. ¶¶ 13, 18.)  This too is

26  insufficient under Rule 9(b).  *See Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 668

27  (9th Cir. 2019) (recognizing that Rule 9(b) requires sufficient detail as "to whom [the alleged

28  misrepresentations] were made").

NOTICE OF MOTION AND MOTION TO
DISMISS [3:22-cv-07619-LB]

1    Likewise, Plaintiff fails to specifically identify *what* the allegedly fraudulent statements

2 were.  This is fatal to her fraud claims, as Rule 9(b) requires Plaintiff to plead the *specific*

3 *representations*, whether written or oral.  *See Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir.

4 1985) (affirming dismissal for failure to detail the specific content of the representation).  Her

5 allegation in paragraph 21 of the Complaint exemplifies this deficiency.  There, Plaintiff asserts

6 that when she was interviewing, she "was provided a falsely rosy picture of everything."  (Compl.

7 ¶ 21.)  Plaintiff then purports to set forth the alleged representations that painted this "rosy

8 picture," but largely fails to specify the contents of any alleged statements.[2]  Instead, Plaintiff

9 generically alleges, *e.g.*, that DataRobot represented that it was "a place of diversity, inclusion,

10 and support for women" and "a financially robust company."  (Compl. ¶ 21(b)-(c).)  But this does

11 nothing to put DataRobot on notice as to the contents of the alleged representations, which is

12 insufficient.  *See In re Lui*, 646 Fed. App'x at 573.  Similarly, Plaintiff's assertion that she was

13 made to believe "that DataRobot was making steady progress towards a soon-to-be concluded

14 IPO" and that "the IPO would be launched later in 2021" and "was being fast tracked" provides

15 little detail as to the contents of any of the alleged statements.[3]  (Compl. ¶ 21(d)-(f).)  The

16 allegations regarding Wright's alleged statements fare no better (e.g., that DataRobot was "ready

17 and able to fast track an IPO by the end of 2021"), as Plaintiff likewise only makes vague

18 reference to the supposed substance, but not any specific contents.  (Compl. ¶¶ 13, 18.)

19    Plaintiff also fails to specifically state *when* the alleged statements were made.  Plaintiff

20 only vaguely asserts that Wright's alleged statements regarding DataRobot's readiness for an IPO

21 occurred "within days of becoming CEO" and "at company meetings" (plural), and that his

22 alleged instruction to unidentified recruiters/hiring agents occurred "in March of 2021."  (Compl.

23

---

24 [2] Indeed, and as explained above, Plaintiff's Complaint only sets forth the actual contents of only a single statement:
that when Plaintiff asked a recruiter "[h]ow sure are you that you'll go IPO?" the recruiter responded, "[o]ur CEO is

25 backing this and the leadership is doubling down.  Your skill set is exactly what we need as we go IPO."  (Compl. ¶
21(a).)  But even this is insufficient, as it does not provide any factual detail as to what is false or misleading about

26 this statement.  *See Cafasso*, 637 F.3d at 1055.

27 [3] At times, Plaintiff's Complaint uses quotation marks when referring to certain alleged statements; however, she
does not indicate whether this denotes a direct quote (e.g., from an email), whether it denotes that she is paraphrasing

28 a statement, or something else altogether.  This vague and confusing pleading strategy fails to pass muster under Rule
9(b).

NOTICE OF MOTION AND MOTION TO
DISMISS [3:22-cv-07619-LB]

¶¶ 13, 18.)  And Plaintiff does not even bother to allege when Wright's supposed statements regarding DataRobot's financial projections were made.  (Compl. ¶ 13.)  Likewise, Plaintiff only vaguely alleges that certain representations were made when she was interviewing, but fails to identify any interview dates.  (Compl. ¶ 21.)  District courts in California have routinely found that similar allegations do not satisfy Rule 9(b).  For example, in *Davies v. Broadcom Corp.*, 130 F. Supp. 3d 1343 (C.D. Cal. 2015), the plaintiff alleged that her employer defrauded her on two separate occasions when it promised her promotions "in or about 2012" and "in or about March 2014."  *Davies*, 130 F. Supp. 3d at 1351.  The court granted the defendant's motion to dismiss because these allegations only vaguely identified the time of the alleged misrepresentations, which is insufficient.  *Id.*; *see also, e.g.*, *Teed v. Chen*, No. 22-cv-02862-CRB, 2022 WL 16839496, at *8 (N.D. Cal. Nov. 9, 2022) (dismissing the plaintiff's fraud claim where the complaint only vaguely alleged that the at-issue statements were made "in and throughout September of 2019").

Finally, Plaintiff's claims fail because she wholly fails to identify *where* any of the alleged statements were made.  *See Patriot Sci. Corp. v. Korodi*, 504 F. Supp. 2d 952, 965 (S.D. Cal. 2007) (dismissing fraud claim that had "no allegations regarding where the alleged false representations were made"); *Davies*, 130 F. Supp. 3d at 1351 (same).

Plaintiff has not met Rule 9(b)'s heightened pleading requirements.  As such, Counts One through Four must be dismissed.

**B.**     **Plaintiff's Fraud Claims (Counts 1-4) Also Fail Because She Cannot Show Detrimental Reliance as a Matter of Law**

Each of Plaintiff's fraud claims requires that she plead, with sufficient particularity, that she justifiably relied on DataRobot's alleged promise, representation, or concealment of a material fact.  *See Yastrab v. Apple Inc.*, 173 F. Supp. 3d 972, 978 (N.D. Cal. 2016) (recognizing that fraud-based claims "must sufficiently allege an actionable misrepresentation and reliance on that representation").  To establish this element of fraud, Plaintiff must show: (1) she actually relied on DataRobot's misrepresentations, and (2) she was reasonable in doing so.  *OCM Principal Opportunities Fund v. CIBC World Markets Corp.*, 157 Cal. App. 4th 835, 863-64

1   (2007).

2         Plaintiff cannot establish her actual reliance as a matter of law.  The crux of Plaintiff's

3   fraud claims is that DataRobot made some promise or representation relating to its timing and

4   readiness for an IPO, which induced her to quit her job at Cisco and join DataRobot.  (Compl. ¶

5   25.)  But Plaintiff's claimed reliance is directly contradicted by the other allegations in her

6   Complaint.  Plaintiff alleges that when she joined DataRobot in May 2021, she: (1) was

7   "surprised that basically nothing seemed to be going on in service to the 'imminent' IPO," (2)

8   discovered that DataRobot's practices "were not consistent with the promise of an imminent

9   IPO," (3) reported conditions that "stood between DataRobot and any possibility of an IPO"

10   including during an important audit, and (4) discovered errors in the employee roster, which was

11   "factually inconsistent with the promise that DataRobot was imminently ready for an IPO."

12   (Compl. ¶¶ 25, 29, 30.)  Despite her discoveries, Plaintiff remained employed at DataRobot until

13   she was discharged over a year later.  (Compl. ¶ 36.)  It is settled law that an employee cannot

14   claim that she *actually* relied on any misrepresentations where the employee subsequently

15   discovers the truth of the misrepresentations, but nevertheless decides to remain employed

16   anyways.  *Rochlis v. Walt Disney Co.*, 19 Cal. App. 4th 201, 215-16 (1993) (disapproved on other

17   grounds by *Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238 (1994)); *see also Rubinstein v. SAP*

18   *AG*, No. C 11-06134 JW, 2012 WL 726269, at *6 (N.D. Cal. Mar. 1, 2012) (allegation that the

19   plaintiff continued to work after being told he would not be promoted undermined his claim that

20   he relied on alleged misrepresentations that he would be promoted).

21         Plaintiff fails to sufficiently plead reliance to support her fraud claims and thus Counts

22   One through Four must be dismissed.

23       **C.**    **Plaintiff's Promissory Fraud Claim (Count 1) Additionally Fails Because**

24             **Plaintiff Does Not Allege an Actionable Promise or Requisite Intent**

25         A claim of promissory fraud under California law requires that Plaintiff allege with

26   sufficient particularity, *inter alia*, facts showing: (1) DataRobot made a promise regarding a

27   material fact, and (2) DataRobot did not intend to perform at the time it made the promise.

28   *Rossberg v. Bank of Am., N.A.*, 219 Cal. App. 4th 1481, 1498 (2013) (citation omitted). Because

Plaintiff utterly fails to plead facts sufficient to support these elements, Plaintiff's claim for promissory fraud must be dismissed.

### 1.   Plaintiff Fails to Allege That DataRobot Made Any Actionable Promises Regarding a Material Fact

To be actionable as fraud, a promise must indicate an affirmative undertaking or commitment on the part of the defendant. *Baldwin Park Unified Sch. Dist. v. Genesis Mgmt. & Ins. Servs. Corp.*, No. CV 16-9349-DMG (EX), 2017 WL 5635018, at *6 (C.D. Cal. July 10, 2017). Vague promises are insufficient to support a promissory fraud claim. *Rochlis*, 19 Cal. App. 4th at 216; *see also Hall v. FedEx Freight, Inc.*, No. 1:13-cv-01711-SKO, 2015 WL 574177, at *10 (E.D. Cal. Feb. 11, 2015) (recognizing that "courts will not enforce vague promise about the terms and conditions of employment that provide no definable standards for constraining an employer's inherent authority to manage its enterprise") (quoting *Scott v. Pacific Gas & Elec. Co.*, 46 Cal. 4th 454, 472 (1995)). Here, Plaintiff's promissory fraud claim is premised on alleged statements about DataRobot's financial outlook, its readiness for an IPO, and how an IPO would impact the value of employees' equity. (Compl. ¶¶ 13, 18, 21.) But these statements are too vague to support Plaintiff's claim. *See Louis v. Nailtiques Cosmetic Corp.*, No. CV 09-242-VBF(JTLx), 2009 WL 10681099, at *8 (C.D. Cal. Oct. 19, 2009) (finding employer's alleged promise to make the plaintiff "a very wealthy, successful woman" too vague to be actionable as fraud), *aff'd* 423 Fed. App'x 711, 713 (9th Cir. 2011). Moreover, these alleged statements are not actionable fraud because they are vague expressions of opinion, not promises. *See Louis*, 423 Fed. App'x at 713 ("[a] statement about future value is ordinarily classified as a speculative observation and a mere statement of opinion, and as such, does not constitute a basis for a complaint of fraud") (internal marks and citation omitted).

### 2.   Plaintiff Has Not Pled Any Facts To Show That DataRobot Intended Not To Perform at the Time of the Alleged Promise

A "plaintiff claiming promissory fraud must meet a deliberately high burden, and, to survive a motion to dismiss, must be able to point to specific, objective manifestations of fraudulent intent by showing a fraudulent scheme or device." *Universal Studios Int'l B.V. v. Ent.*

*Television Network FZE*, No. CV 09-01348 GAF (FFMx), 2009 WL 10675950, at *3 (C.D. Cal. Aug. 25, 2009) (citation omitted).  Under Rule 9(b), "a plaintiff must point to facts which show that defendant harbored an intention not to be bound by terms of the contract at formation."  *Mat-Van, Inc.*, 2007 WL 2206946, at *6 (citations omitted).  "In so differentiating a false promise from the great bulk of broken promises, the allegations necessary to show contemporaneous intention not to perform should be clear, specific, and unequivocal" and must allege "something more than mere non-performance."  *Antl v. AGA Serv. Co.*, No. 2:22-cv-00504-KJM-AC, 2022 WL 16722221, at *2 (E.D. Cal. Nov. 4, 2022) (internal marks and citation omitted).

Assuming, *arguendo*, that DataRobot's alleged promise could support a claim for fraud—which it cannot—Plaintiff has not pled any facts to evidence that DataRobot did not intend to keep its alleged promise at the time it was made.  Instead, Plaintiff conclusorily alleges that DataRobot's intent to defraud can be inferred by its alleged: (1) failure to "take any material steps towards going IPO before the false promise was made," (2) failure to "attempt performance of the IPO on a fast track basis" and (3) "continued assurances that the company would go IPO after it was clear it would not be able to perform as promised."  (Compl. ¶ 45.)  But there are no factual allegations to support these conclusory assertions.[4]  In fact, Plaintiff fails to identify what "material steps towards going IPO" DataRobot failed to take, nor does she allege any facts about DataRobot's alleged failure to attempt performance of the IPO on a "fast track" basis.[5]  Likewise, Plaintiff does not identify any "continued assurances" that were allegedly made. Moreover, any potential inference of fraud is negated by Plaintiff's own allegations that DataRobot did take steps towards an IPO.  Plaintiff alleges that DataRobot hired a new CFO, Damon Fletcher, in May 2021 to "oversee the pre-IPO auditing process" and that she participated in these audits.  (Compl. ¶¶ 18(a), 30.)  DataRobot's partial performance thus negates any possible inference of fraud that could be drawn.  *See Kaylor v. Crown Zellerbach, Inc.*, 643 F.2d

---

[4] And even if she had factual support for these points, they cannot reasonably be construed as supporting the allegation that DataRobot intended to defraud her.

[5] Plaintiff's only factual allegation to this point, albeit not at all specific, is that "there was no SOX compliance work going on at the time that Wright made the false statement of fact that DataRobot was fast-tracking an IPO in 2021." (Compl. ¶ 13.)  But this allegation was made on information and belief, which is insufficient under Rule 9(b) and must be disregarded.  *See Wehlage*, 791 F. Supp. 2d at 789.

NOTICE OF MOTION AND MOTION TO DISMISS [3:22-cv-07619-LB]

1362, 1368 (9th Cir. 1981) ("initial performance in accordance with its promises negates any possible inference of fraud.").

### D. Plaintiff's Intentional Misrepresentation Claim (Count 2) Additionally Fails Because Plaintiff Does Not Allege An Actionable Representation

To allege intentional misrepresentation, Plaintiff must sufficiently plead an actionable misrepresentation. *Yastrab*, 173 F. Supp. 3d at 977-78 (citation omitted). To be actionable, a misrepresentation must "pertain to past or existing material facts" and not merely "statements or predictions regarding future events" which are inactionable opinions. *Cansino v. Bank of Am.*, 224 Cal. App. 4th 1462, 1469-71 (2014); *see also Graham v. Bank of Am., N.A.*, 226 Cal. App. 4th 594, 606-07 (2014) ("A representation is an opinion if it expresses only (a) the belief of the maker, without certainty, as to the existence of a fact; or (b) his judgment as to quality, value . . . or other matters of judgment") (internal marks and citation omitted).

Plaintiff's intentional misrepresentation claim is premised on the same alleged statements as her promissory fraud claim; namely, Wright's alleged opinion that the company would be ready and able to "fast track" an IPO by the end of 2021, DataRobot's financial projections (which are, by their very nature, merely estimates), and DataRobot's alleged prediction that an IPO had the potential to make employees wealthy. (Compl. ¶¶ 13, 18, 21.) Plaintiff's claim fails for similar reasons. It is axiomatic that opinions or predictions about future events are not actionable as fraud. *See Cansino*, 224 Cal. App. 4th at 1470. This is particularly true where the alleged representation regards the future state of the financial market or future market forecasts. *See id.* at 1470-71 ("Like acts of nature and their consequences, the future state of a financial market is unknown . . . [a]ny market forecast must be regarded not as fact but as prediction or speculation"); *Louis*, 423 Fed. App'x at 713 ("A statement about future value is ordinarily classified as a speculative observation and a mere statement of opinion . . ."); *Graham*, 226 Cal. App. 4th at 606 ("Representations of opinion, particularly involving matters of value, are ordinarily not actionable representations of fact").

Because she has failed to plead an actionable representation, the Court should dismiss Count Two of Plaintiff's Complaint.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**E.     Plaintiff's Fraudulent Concealment Claim (Count 3) Additionally Fails Because Plaintiff Has Not Pled That DataRobot Owed Her a Duty of Disclosure**

A claim for fraudulent concealment requires specific allegations that DataRobot concealed or suppressed a material fact that it was under a duty to disclose to Plaintiff.  *Graham*, 226 Cal. App. 4th at 606.  A duty to disclose only arises where either: (1) the defendant is in a fiduciary relationship with the plaintiff, or (2) the defendant is in "some other relationship" with the plaintiff, *and* the defendant has exclusive knowledge of the material fact, actively conceals the material fact, or makes only partial representations while suppressing other material facts. *Immobiliare, LLC v. Westcor Land Title Ins. Co.*, 424 F. Supp. 3d 882, 888 (E.D. Cal. 2019).

Plaintiff does not allege—nor could she—the DataRobot had a fiduciary relationship with her at the time the alleged statements were made.  Employment relationships, and by extension, pre-employment relationships, do not create fiduciary relationships.  *See Evenfe v. Esalen Inst.*, No. 15-CV-05457-LHK, 2016 WL 3965167, at *7 (N.D. Cal. July 24, 2016) (recognizing that, as "a general matter, the fact of an employer-employee relationship alone is insufficient to create a fiduciary relationship" and citing cases) (internal marks & citations omitted).  Plaintiff's Complaint seemingly acknowledges that her mere employment relationship with DataRobot does not establish a fiduciary relationship, as she only alleges that DataRobot "assumed a fiduciary duty of loyalty" *after* she was issued DataRobot stock.[6]  (Compl. ¶ 3.)

Plaintiff also does not meet her burden of pleading "some other relationship."  Nor can she ever do so with respect to her allegations related to Wright's supposed comments because, by her own admission, she did not begin to interview with DataRobot until after the comments were made.  (Compl. ¶ 11.)  Even if she could sufficiently allege "some other relationship," she still has not sufficiently pled that DataRobot had the required duty of disclosure because she fails to allege that DataRobot either had exclusive knowledge of material facts, actively concealed material facts, or only made partial representations of material facts and suppressed others.  For instance, Plaintiff claims DataRobot concealed that its former CEO did not believe the company

---

[6] DataRobot does not concede that it ever owed Plaintiff a fiduciary duty.

was ready for an IPO, that four civil lawsuits had been filed by former employees in 2020, and that the NLRB had a pending complaint against it.  (Compl. ¶ 17(a)-(c).)  Putting aside that these purported facts say nothing about a company's ability to go public, these are all facts within the public domain.  Indeed, Mr. Achin's opinions were widely-reported, and civil lawsuits and NLRB case dockets are publicly available.  Thus, they cannot form the basis of Plaintiff's concealment claim.  *See Magpali v. Farmers Group, Inc.*, 48 Cal. App. 4th 471, 482 (1996) (rejecting the plaintiff's concealment claim because, as a matter of law, the alleged failure to disclose information that was already available to the plaintiff is not actionable fraud).  Nor can her claim be saved by her assertion that that DataRobot "knew or should have known" about other matters that might have an impact on its ability to make an IPO at the end of 2021.  (Compl. ¶ 17(d)-(f).)  These equivocal allegations are insufficient to show that DataRobot had *actual knowledge* of these facts and that it concealed them.  *See Marketing West, Inc. v. Sanyo Fisher (USA) Corp.*, 6 Cal. App. 4th 603, 613 (1992).  Finally, Plaintiff shamelessly points to Fletcher's alleged arrest record and asserts that DataRobot concealed it.  (Compl. ¶ 17(g).)  However, Plaintiff's Complaint acknowledges that Fletcher was hired *after* DataRobot's alleged statements, and *after* Plaintiff's supposed reliance.  (Compl. ¶¶ 18(a), 25.)  Thus, this assertion obviously cannot support her concealment claim.[7]

Having failed to properly allege that DataRobot owed her a duty of disclosure, Plaintiff's fraudulent concealment claim (Count Three) must be dismissed.

**F.     Plaintiff's Negligent Misrepresentation Claim (Count 4) Additionally Fails Because Plaintiff Does Not Allege an Actionable Representation and Her Claim is Premised On a Future Promise**

The elements for a negligent misrepresentation claim are similar to the elements for intentional misrepresentation; however, negligent misrepresentation requires the lack of a reasonable ground for believing a statement to be true, whereas intentional fraud requires knowledge of falsity.  *See Moncada v. West Coast Quartz Corp.*, 221 Cal. App. 4th 768, 781 (2013).  Plaintiff's negligent misrepresentation claim is predicated on the same inactionable

---

[7] Given this, the allegations about Mr. Fletcher should be seen for what they are—a salacious and reprehensible attempt to smear Mr. Fletcher and DataRobot.

1    opinions as her intentional misrepresentation claim, and it likewise fails.  *See White v. J.P.*

2    *Morgan Chase, Inc.*, 167 F. Supp. 3d 1108, 1117 (E.D. Cal. 2016) (explaining that "[p]redictions

3    as to future events, or statements as to future action" do not support a claim for negligent

4    misrepresentation) (citation omitted).  And to the extent Plaintiff's negligent misrepresentation

5    claim is premised on DataRobot's alleged promise to perform in the future (i.e., that DataRobot

6    would have an IPO at the end of the year), a promise cannot support a claim for negligent

7    misrepresentation as a matter of law.  *Stockton Mortgage, Inc. v. Tope*, 233 Cal. App. 4th 437,

8    458 (2014) (original emphasis) (citing *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App.

9    4th 153, 158-59 (1991)).  Accordingly, Plaintiff's claim for negligent misrepresentation fails and

10   Count Four must be dismissed.

11          **G.**     **Plaintiff's Intentional Infliction of Emotional Distress Claim (Count 9) Fails on**

12                     **Multiple Grounds**

13          To state a claim for intentional infliction of emotional distress ("IIED"), Plaintiff must

14   plead facts showing: "(1) extreme and outrageous conduct by the defendant with the intention of

15   causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's

16   suffering severe or extreme emotional distress; and (3) actual and proximate causation of the

17   emotional distress by the defendant's outrageous conduct."  *Lawler v. Montblanc N. Am., LLC*,

18   704 F.3d 1235, 1245 (9th Cir. 2013) (quoting *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009)).

19   Plaintiff fails to plead the facts required to sustain this claim.

20          **1.**     **Plaintiff Has Not Pled Extreme and Outrageous Conduct**

21          Plaintiff's claim first fails because she does not plead "extreme and outrageous conduct."

22   The conduct at issue must be "so extreme and outrageous as to go beyond all possible bounds of

23   decency . . . and be regarded as atrocious, and utterly intolerable in a civilized community."

24   *Alcorn v. Anbro Eng., Inc.*, 2 Cal. 3d 493, 499 n.5 (1970).  Mere indignities, insults, threats,

25   annoyances, petty oppressions, and the like are not enough.  *Hughes*, 46 Cal. App. 4th at 1051.

26   Whether the alleged conduct is extreme and outrageous is a question of law, and a plaintiff must

27   allege the "extreme and outrageous conduct" with "great specificity."  *Vasquez v. Franklin Mgmt.*

28   *Real Estate Fund, Inc.*, 222 Cal. App. 4th 819, 832 (2013); *Fowler v. Varian Assocs.*, 196 Cal.

NOTICE OF MOTION AND MOTION TO
DISMISS [3:22-cv-07619-LB]

1    App. 3d 34, 44 (1987).

2           Plaintiff's shotgun pleading approach makes it difficult to determine the specific bases of

3    her IIED claim.[8]  But to the extent her IIED claim is premised on the denial of a promotion,

4    denial of a bonus, exclusion from meetings and decisionmaking, or her termination, these are

5    personnel management activities, which are not actionable.  *See Yau v. Santa Margarita Ford,*

6    *Inc.*, 229 Cal. App. 4th 144, 161 (2014) (upholding demurrer for IIED claim based on conduct "in

7    the normal course of the employer-employee relationship"); *Miklosy v. Regents of the Univ. of*

8    *Calif.*, 44 Cal. 4th 876, 902 (2008) (conduct in normal course of employment relationship cannot

9    give rise to IIED claim); *Lee v. S. of Mkt. Health Ctr.*, No. 19-CV-06482-LB, 2020 WL 2219032,

10   at *7 (N.D. Cal. May 7, 2020) (same).  Moreover, Plaintiff's claim that she was isolated and

11   ostracized does not "rise to the 'extreme and outrageous' standard required for an intentional

12   infliction of emotional distress claim."  *McCoy v. Pacific Maritime Ass'n*, 216 Cal. App. 4th 283,

13   295 (2013).  Finally, to the extent Plaintiff's IIED claim is premised on Cole's alleged statement

14   that Plaintiff is a "toxic bitch" and/or Wright's alleged statement that "everyone hates [Plaintiff],"

15   even if true, these are mere insults that cannot form the basis of an IIED claim.  *See Hughes*, 46

16   Cal. 4th at 1051 (liability for IIED "does not extend to mere insults" or "indignities"); *Lee*, 2020

17   WL 2219032, at *7 (recognizing that derogatory comments related to a plaintiff's protected

18   characteristic "may be evidence for the substantive claims, but they are isolated instances that do

19   not amount to the extreme conduct needed to plead a stand-alone claim of intentional infliction of

20   emotional distress") (citation omitted).

21                        **2.       Plaintiff Has Not Pled Severe or Extreme Emotional Distress**

22           Plaintiff's IIED claim should also be dismissed because she fails to plead facts showing

23   she suffered "severe or extreme distress."  The severe emotional distress necessary to state a

24   claim for IIED is "emotional distress of such substantial quality or enduring quality that no

25   _____

26   [8] Plaintiff incorporates the Complaint's 117 previous paragraphs into her IIED cause of action.  (Compl. ¶ 118.)  This
     form of pleading is not permitted.  *See Stanislaus Food Prods. Co. v. USS-POSCO Indus.*, No. CV F 09-0560 LJO
     SMS, 2010 WL 3521979, at *31 n.16 (E.D. Cal. Sept. 3, 2010) (recognizing that allegations "which incorporate each

27   preceding paragraph, regardless of relevancy, are not permitted"); *see also Sollberger v. Wachovia Sec. LLC*, No.
     SACV 09-0766 AG (ANx), 2010 WL 2674456, at *4-5 (C.D. Cal. June 30, 2010) (shotgun pleading whereby each

28   count incorporates every antecedent allegation by reference "deprives [the defendant] of knowing exactly what they
     are accused of doing wrong," and "alone warrants dismissal").

1    reasonable man in a civilized society should be expected to endure it."  *Haley v. Cohen & Steers*

2    *Cap. Mgmt., Inc.*, 871 F. Supp. 2d 944, 960 (N.D. Cal. 2012) (dismissing IIED claim).

3    Boilerplate allegations are insufficient.  *E.g.*, *Lawler*, 704 F.3d at 1246 (holding that the

4    plaintiff's "anxiety, sleeplessness, upset stomach, and . . . muscle twitches" did not rise to the

5    level of severe emotional distress); *Landucci v. State Farm Ins.*, 65 F. Supp. 3d 694, 711-12 (N.D.

6    Cal. 2014) (dismissing IIED claim where the plaintiff alleged the defendants "cause[d] her mental

7    anguish, anxiety, and distress" and she "felt extremely emotionally distressed and pained, fearing

8    for her job and livelihood"); *Hatfield v. DaVita Healthcare Partners, Inc.*, No. C 13-5206 SBA,

9    2015 WL 106632, at *4 (N.D. Cal. Jan. 7, 2015) (allegations that the plaintiffs "suffered

10   depression, fear and anxiety about their jobs and lives" are insufficient to state an IIED claim).

11   Plaintiff alleges in a conclusory fashion that, because of DataRobot's alleged conduct, she was

12   "injured in her strength, health, and activity, sustaining shock and injury to her nervous system,

13   all of which have caused and continue to cause [her] severe emotional distress."  (Compl. ¶ 120.)

14   But she pleads no facts to support these conclusions, and she fails to allege emotional distress of

15   the required substantial or enduring quality to state an IIED claim.

16              **3.      Plaintiff's Claim is Barred By Workers' Compensation Exclusivity**

17              Plaintiff's IIED claim should also be dismissed because the California Workers'

18   Compensation Act provides the exclusive remedy for Plaintiff's alleged emotional distress.  *See*

19   Cal. Lab. Code § 3600(a).  An employer's alleged "intentional misconduct in connection with

20   actions that are a normal part of the employment relationship" are "encompassed within the

21   worker's compensation bargain, even if the misconduct could be characterized as manifestly

22   unfair, outrageous, harassment, or intended to cause emotional disturbance."  *Yau*, 229 Cal. App.

23   4th at 162 (internal marks and citations omitted).  Conduct such as "demotions, promotions,

24   criticism of work practices, and frictions in negotiations as to grievances" are "normal part[s] of

25   the employment relationship."  *Id.*  In determining whether workers' compensation exclusivity

26   applies, "the critical issue is whether the alleged acts, bereft of their motivation, can ever be

27   viewed as a normal aspect of the employer relationship . . ."  *Charles J. Vacanti, M.D., Inc. v.*

28   *State Comp. Ins. Fund*, 24 Cal. 4th 800, 820-22 (2001) (emphasis added).  As discussed above,

1    DataRobot's managerial decisions relating to Plaintiff's bonuses, promotion, termination, and

2    other working conditions are normal aspects of the employment relationship, and therefore

3    insufficient to support a claim for IIED.

4         **H.      Plaintiff Has Not Plausibly Pled Her Claim For Punitive Damages**

5         The federal pleading standards set forth in *Twombly* and *Iqbal* govern claims for punitive

6    damages.  *Kelley v. Corrections Corp. of Am.*, 750 F. Supp. 2d 1132, 1146-47 (E.D. Cal. 2010).

7    Pursuant to those standards, the complaint must set forth factual allegations sufficient "to raise a

8    right to relief above the speculative level" and demands more than an "unadorned, the-defendant-

9    unlawfully-harmed-me accusation."  *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 662.  Under

10   California law, a plaintiff may recover punitive damages only if she can show that "the defendant

11   has been guilty of oppression, fraud, or malice."  Cal. Civ. Code § 3294(a).  Allegations are

12   insufficient when the plaintiff asserts "nothing more than conclusory allegations" of oppression,

13   fraud, or malice.  *Kelley*, 750 F. Supp. 2d at 1147; *see also, e.g.*, *Opperwall v. State Farm Fire &*

14   *Cas. Co.*, No. 17-CV-07083-YGR, 2018 WL 1243085, at *5 (N.D. Cal. Mar. 9, 2018) (following

15   *Kelley* and dismissing punitive damages claim because the "plaintiff does no more than offer

16   legal conclusions couched as factual allegations."); *Dipaola v. JPMorgan Chase Bank*, No. C 11-

17   2605 SI, 2011 WL 3501756, at *6 (N.D. Cal. Aug. 10, 2011) (following *Kelley* and dismissing

18   punitive damages claim).

19        Plaintiff has failed to plead sufficient facts to support a claim for punitive damages.[9]

20   Instead, she alleges with conclusory buzzwords that DataRobot's acts "were done maliciously,

21   oppressively, and/or fraudulently" and that it "either intentionally personally engaged in such

22   outrageous misconduct" or "failed to take action to abate the wrongful conduct, with conscious

23   disregard of the rights and safety of the Plaintiff and other employees, and/or otherwise

24   authorized or ratified the wrongful conduct of the offenders."  (Compl. ¶¶ 94, 103, 116, 121.)  But

25   Plaintiff has utterly failed to allege any specific corresponding facts showing that DataRobot

---

26   [9] Moreover, Plaintiff purports to seek punitive damages for her negligent misrepresentation claim, which are not
27   recoverable under California law.  *See Reid v. Moskovitz*, 208 Cal. App. 3d 29, 32-33 (1989) (reversing punitive
     damages award where liability based on negligent rather than intentional misrepresentation); *Branch v. Homefed*
28   *Bank*, 6 Cal. App. 4th 793, 799 (1992) ("[I]t has been uniformly held that punitive damages are not recoverable in
     that branch of "deceit" which is mere negligence.").

NOTICE OF MOTION AND MOTION TO
DISMISS [3:22-cv-07619-LB]

acted maliciously, oppressively, or fraudulently.  *See Kelley*, 750 F. Supp. 2d at 1147-48 (plaintiffs "conclusory allegations of 'conscious disregard of [the plaintiffs] rights and . . . intent to vex, injure and annoy" were "nothing more than the plaintiff's bare characterization of [the defendant's] motives as evil" and "unsupported by allegation of any facts").  Plaintiff's conclusory allegations merely recite the elements of her request and are insufficient to support punitive damages.

Accordingly, this Court should dismiss Plaintiff's punitive damages claim because her allegations are insufficient to state such a claim as a matter of law.

## VI.  <u>CONCLUSION</u>

For the reasons stated above, DataRobot respectfully requests that the Court grant its Motion to Dismiss Count One (promissory fraud), Count Two (intentional misrepresentation), Count Three (fraudulent concealment), Count Four (negligent misrepresentation), and Count Nine (intentional infliction of emotional distress) of Plaintiff's Complaint, and dismiss Plaintiff's request for punitive damages.

Dated: December 9, 2022

ANDREW R. LIVINGSTON
RACHEL CAPLER
Orrick, Herrington & Sutcliffe LLP

By: _____
ANDREW R. LIVINGSTON
Attorneys for Defendant
DATAROBOT, INC.