John D. Winer, Esq. (SBN: 91078)
Matthew P. Vandall, Esq. (SBN: 196962)
WINER, BURRITT & SCOTT, LLP
1901 Harrison Street, Suite 1100
Oakland, CA 94612
Tel: 510.543.1000
Fax: 510.433.1001
Email: matthew@wmlawyers.com

Attorneys for Plaintiff
RAQUEL VAZQUEZ

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

RAQUEL VAZQUEZ,

      Plaintiff,

  vs.

DATAROBOT, INC.; DAN WRIGHT; and
DOES 1 through 20, inclusive.

      Defendants.

Case No. 3:22-cv-07619

**PLAINTIFF'S NOTICE OF MOTION
AND MOTION TO REMAND;
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT
THEREOF**

Complaint Filed: November 15, 2022

Date:   March 2, 2023
Time:  9:30 a.m.
Crtrm:  B

Judge:  Hon. Laurel Beeler

**TABLE OF CONTENTS**

PAGE

INTRODUCTION ................................................................................ 1

PROCEDURAL HISTORY .............................................................. 3

ARGUMENT ...................................................................................... 4

    A. The removal statutes are strictly construed in favor of remand ........................ 4

    B. The Court Should Remand This Case Because Federal Subject Matter Jurisdiction Does Not Exist .................................................................................... 4

        1. DataRobot's "Nerve Center" is Located in California Which Deprives this Court of Subject Matter Jurisdiction Without Regard to Wright ............... 4

        2. Dan Wright's Citizenship in California Destroys Complete Diversity ......... 6

    C. Recent Cases Out of the Northern District of California Reject the Snap Removal Procedure by Applying Ninth Circuit Precedent ........................................ 7

    D. Courts from the Central District of California Also Reject the Snap Removal Procedure ..................................................................................... 11

    E. The Older Cases Relied Upon by DataRobot in Support of Ignoring Wright's Citizenship Should Not be Followed ................................................... 13

    F. Wright Was Not Fraudulently Joined to Prevent Removal ........................... 15

        1. The fact that Vazquez remained employed after learning about Wright's falsehoods does not preclude her reliance upon those falsehoods ............. 15

        2. Wright is liable for his prior misrepresentations because he intended and expected them to be repeated to prospective employees like Vazquez ....... 17

        3. Vazquez's Claim for Intentional Misrepresentation Alleges Actionable Misrepresentations ................................................................. 18

        4. Wright Was Not Fraudulently Joined to Vazquez's Third Cause of Action for Misrepresentation by Concealment ........................................ 18

        5. Wright Was Not Fraudulently Joined to Vazquez's Fourth Claim for Negligent Misrepresentation ..................................................... 20

i

G. Even if the Court finds that Vazquez's fraud claims were insufficiently pled, remand is still proper because she can amend her claims ………………………… 21

H. Vasquez's Ninth Cause of Action for Intentional Infliction of Emotional Distress Can Be Cured by Amendments ……………………………………….... 21

I. The court should rule on plaintiff's motion to remand before any dispositive motion because subject matter jurisdiction is the threshold issue ………………… 22

J. Alternatively, Plaintiff Should Be Allowed Discovery On The Topic of DataRobot's Nerve Center Before the Motion to Remand is Decided …………….. 24

CONCLUSION ………………………………………………………….. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amarant v. Home Depot U.S.A., Inc.*,
   2013 WL 3146809 (E.D. Cal. 2013) ................................................................. 23

*Angie M. v. Superior Court*,
   37 Cal. App. 4th 1217 (1995) .......................................................................... 26

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................ 26

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................ 25

*Bily v. Arthur Young & Co.*,
   3 Cal.4th 370 (1992) ................................................................................. 19, 20

*California ex rel. Lockyer v. Dynegy, Inc.*,
   375 F3d 831 (9th Cir. 2004) ............................................................................. 6

*Carpenter v. Hamilton*,
   18 Cal.App.2d 69 (1936) ...................................................................... 18, 19, 22

*Carper v. Adknowledge, Inc.*,
   2013 WL 5954898 (N.D. Cal. 2013) .................................................. 9, 12, 13, 16

*Clarence E. Morris, Inc. v. Vitek*,
   412 F.2d 1174 (9th Cir. 1969) ........................................................ 10, 11, 12, 16

*Del E. Webb Corp. v. Structural Materials Co.*,
   123 Cal. App. 3d 593 (1981) .......................................................................... 26

*Gaus v. Miles, Inc.*,
   980 F.2d 564 (9th Cir. 1992) ........................................................................... 6

*Grancare, LLC v. Thrower by & through Mills*,
   889 F.3d 543 (9th Cir. 2018) .......................................................................... 25

*Hall v. FedEx Freight, Inc.*,
   2015 WL 574177 (E.D. Cal., 2015) ................................................................ 19

iii

*Hertz Corp. v. Friend,*
  (2010) 559 U.S. 77 ................................................................................ 3, 7

*Holmstrom v. Harad,*
  2005 WL 1950672 (N.D. Ill. Aug. 11, 2005) ........................................ 15

*Hoschar v. Appalachian Power Co.,*
  (4th Cir. 2014) 730 F.3d 163 .................................................................. 7

*International Primate Protection League v. Administrators of Tulane Educational Fund,*
  500 U.S. 72 (1991) .................................................................................. 9

*J. Doe v. Mitchell,*
  2019 WL 1749521 (N.D. Cal. April 19, 2019) ...................................... 12

*Jennings-Frye v. NYK Logistics Americas Inc.,*
  2011 WL 642653 (C.D. Cal. Feb. 11, 2011) .......................................... 14

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
  511 U.S. 375 (1994) .............................................................................. 24

*LiMandri v. Judkins,*
  52 Cal. App. 4th 326 (1997) ................................................................... 2

*Livitsanos v. Superior Ct.,*
  2 Cal. 4th 744 (1992) ..................................................................... 23, 24

*Magpali v. Farmers Group, Inc.,*
  48 Cal. App. 4th 471 (1996) ........................................................... 21, 22

*Matsuno v. Hoffman-La Roche, Inc.,*
  2019 WL 5079551 (N.D.Cal. Oct. 10, 2019) ........................................ 12

*Mercer v. Elliott,*
  208 Cal.App.2d 275 (1962) ................................................................... 18

*Morris v. Princess Cruises, Inc.,*
  236 F.3d 1061 (9th Cir. 2001) .............................................................. 14

*Osborne v. MetLife,*
  341 F.Supp.2d 1123 (E.D. Cal 2004) .................................................... 25

*Padilla v. AT&T Corp.,*
  697 F.Supp.2d 1156 (C.D. Cal. 2009) ............................................... 5, 23

*Prize Frize, Inc. v. Matrix (U.S.) Inc.,*
  167 F.3d 1261 (9th Cir. 1999) ................................................................ 6

*Pullman Co. v. Jenkins,*
　(1939) 305 U.S. 534 .................................................................................... 11

*Regal Stone Ltd. v. Longs Drug Stores* Cal., LLC,
　881 F.Supp.2d 1123 (N.D. Cal. 2012) .............................................. 13, 15, 16

*Renteria v. Cnty. of Orange,*
　82 Cal. App. 3d 833 (1978) ......................................................................... 24

*Rochlis v. Walt Disney Co.,*
　19 Cal. App. 4th 201 (1993) ................................................................... 17, 18

*Ruhrgas AG v. Marathon Oil Co.,*
　526 U.S. 574 (1999) ................................................................................. 5, 24

*Shamrock Oil & Gas Corp. v. Sheets,*
　313 US 100 (1941) ........................................................................................ 6

*Sherman v. Haynes & Boone,*
　No. 5:14-cv-01064-PSG, 2014 WL 4211118 .......................... 13, 15, 26

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.,*
　549 U.S. 422 (2007) ..................................................................................... 25

*Stan Winston Creatures, Inc. v. Toys 'R' Us, Inc.,*
　314 F.Supp.2d 177 (S.D.N.Y.) ..................................................................... 13

*Standing v. Watson Pharmaceuticals, Inc.,*
　2009 WL 842211 (C.D. Cal. March 26, 2009) ...................................... 14, 15

*Toumajian v. Frailey,*
　135 F. 3d 648 (9th Cir. 1998) ...................................................................... 25

*Waldon v. Novartis Pharmaceuticals Corp.,*
　2007 WL 1747128 (N.D. Cal. June 18, 2007) ....................................... 13, 16

*Wayne v. DHL Worldwide Express,*
　294 F.3d 1179 (9th Cir. 2002) ..................................................................... 25

**Statutes**

28 U.S.C. § 1332 ........................................................................................ 12, 14

28 U.S.C. § 1332(a)(1) ...................................................................................... 9

28 U.S.C. § 1332(c)(1) ...................................................................................... 7

28 U.S.C. § 1441 ............................................................................................. 14

28 U.S.C. § 1441(b) .......................................................... 10, 11, 12, 13, 14

28 U.S.C. § 1441(b)(2) .......................................................................... 10, 13

28 U.S.C. § 1447(c) ................................................................................ 9, 14, 16

California Civil Code section 1572 ................................................................ 21


**Other Authorities**

Fed. Rules Civ.Proc., rule 8(a)(2) ................................................................. 25

Federal Rule of Civil Procedure 12(b)(6) ....................................................... 5

# NOTICE OF MOTION AND MOTION

TO DEFENDANTS AND THEIR COUNSEL OF RECORD:

**PLEASE TAKE NOTICE that** on March 2, 2023 at 9:30 a.m. or as soon thereafter as the matter may be heard, before the Honorable Laurel Beeler, Courtroom B, United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiff Raquel Vazquez will move the Court for an order remanding this case back to the San Francisco Superior Court. This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Raquel Vazquez In Support of Motion to Remand, the Declaration of Roy Ballard in Support of Motion to Remand, the Declaration of Matthew P. Vandall in Support of Motion to Remand, the complete pleadings and records on file herein, any matters of which the Court may or must take judicial notice, and such other evidence and arguments as may be presented at the hearing on this Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Plaintiff Raquel Vazquez ("Vazquez") properly filed this purely state law case in the Superior Court of California against forum defendants DataRobot, Inc. ("DataRobot") and Dan Wright ("Wright:"), DataRobot's former Chief Executive Officer who resides in San Francisco and worked out of the San Francisco office location. At the time the complaint was filed, complete diversity of citizenship did not exist for two reasons. First, DataRobot's principal place of business is actually in California because that it where it's "nerve center" is located. *See Hertz Corp. v. Friend* (2010) 559 U.S. 77, 80-81 (The principal place of business means the corporation's "nerve center" or the place where a corporation's board and high level officers direct, control and coordinate its activities.). Following the elevation of Wright to the CEO position, the executive leadership was centralized in San Francisco which is also where all Board meetings were held during Wright's tenure. These facts establish that DataRobot's nerve center is located in California and not Boston. This precludes subject matter jurisdiction in this case because Plaintiff is also a California domiciliary and because there is no federal question

1

presented by the complaint. Second, this complaint could not have been originally filed in federal court because Wright is also a domiciliary of California and all counts alleged against him (e.g., Counts 1-4 and Count 9) are state law claims. The Court should remand the case to the Superior Court on either of these alternative grounds.

DataRobot filed its Notice of Removal ("NOR") just four days after Plaintiff received conformed copies of the summons and complaint from the San Francisco Superior Court, and before either Wright or DataRobot could be served. This type of early removal is commonly referred to as a "snap removal" and is disfavored by a multitude of courts in the Ninth Circuit, including the Northern District of California. Wright was also served prior to filing the Motion to Remand and diversity jurisdiction simply does not exist any longer because Wright and Vasquez (and DataRobot) are citizens of the State of California.

Vasquez now moves this Court for an order remanding the case to state court because diversity jurisdiction does not exist, depriving this Court of subject matter jurisdiction. Plaintiff contends that the snap removal procedure was utilized for procedural gamesmanship purposes and should not be countenanced in this action because it would require the Court to ignore the fact that the case will proceed without subject matter jurisdiction. The Complaint alleges that Wright made false statements to DataRobot's employees, specifically its recruiters, which Wright intended and knew would be communicated to prospective hires, including Vazquez. These false statements included false statements of fact about DataRobot's actual financial condition and were not just promises to perform some future action. Hence, the inclusion of Wright as a Defendant was not fraudulent.

Even if DataRobot is correct that Vazquez's claims are not sufficiently pled, DataRobot fails to establish that she cannot amend her Complaint to allege sufficient details. A defendant seeking removal based on an alleged fraudulent joinder must do more than show that the complaint at the time of removal fails to state a claim against the non-diverse defendant. The defendant must also show that "there is no possibility that the plaintiff could prevail on any cause of action it brought against the non-diverse defendant." *Padilla v. AT&T Corp.*, 697 F.Supp.2d

2

1156, 1159 (C.D. Cal. 2009). DataRobot failed to even argue—let alone establish—that Vazquez cannot amend her Complaint to sufficiently allege fraud and intentional infliction of emotional distress. Therefore, this case should be remanded to state court.

DataRobot also filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) which is currently scheduled for hearing on March 2, 2023. That motion cannot be heard prior to Plaintiff's motion to remand because the Court must first be satisfied that federal jurisdiction exists before ruling on the relative merit of any of the claims contained in the operative complaint. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 576 (1999) (holding that federal courts must decide jurisdiction before taking adjudicative action).

## PROCEDURAL HISTORY

Vazquez filed her Complaint in the Superior Court of California, San Francisco County on 11/15/2022. NOR, ¶ 1 and Exhibit A. The Superior Court did not return conformed copies of the summons and complaint to Plaintiff (which are required to effect service) until 11/28/2022. Declaration of Matthew P. Vandall Filed In Support of Motion to Remand ("Vandall Decl."), ¶3. Plaintiff did not immediately serve Wright and DataRobot because the state procedural rules did not require her to and Plaintiff's counsel was preparing for a trial that lasted through 12/08/2022. *Id.* On 12/02/2022, DataRobot, the only potential non-local defendant, filed its NOR alleging that forum defendant Wright need not be considered for diversity purposes because he had not yet been served and that complete diversity exists because Wright is a sham defendant. *See* Docket No. 1 (12/2/22 filing date for NOR). The next business day, December 5, Plaintiff's counsel directed that Wright be served and forum defendant Wright was served on December 8, 2022. *Id.,* ¶ 3 & Exh. A (POS for Wright). Following a discussion with Wright's counsel, Wright was served with a federal summons on December 19, 2022. *Id.*, ¶4, Exhs. B, C. Wright has been served and his presence in the case destroys complete diversity regardless of DataRobot's citizenship. *See* Dkt. #24 (federal proof of service of summons and complaint).

Through the NOR, this Court is being asked to assume jurisdiction where complete diversity does not exist and did not exist at the time the complaint was originally filed. There is

3

no federal question presented. In any event, the day after Wright was served with the state court summons, 12/09/22, DataRobot moved to dismiss various causes of action from plaintiff's complaint and her prayer for punitive damages. Docket No. 13 (Motion to Dismiss). That motion is scheduled for hearing on March 2, 2023. *Id.* The motion to dismiss, however, cannot be heard prior to Plaintiff's motion to remand because this Court must first determine whether it has subject matter jurisdiction prior to ruling on a potentially dispositive motion.

## ARGUMENT

### A. <u>The removal statutes are strictly construed in favor of remand.</u>

The removal statutes are strictly construed to limit removal jurisdiction. Doubts as to removability are resolved in favor of remanding the case to state court. *Shamrock Oil & Gas Corp. v. Sheets* 313 US 100, 108-109 (1941); *Prize Frize, Inc. v. Matrix (U.S.) Inc.*, 167 F.3d 1261, 1265 (9th Cir. 1999). A defendant seeking removal of an action to federal court has the burden of establishing grounds for federal jurisdiction. *California ex rel. Lockyer v. Dynegy, Inc.* 375 F3d 831, 838 (9th Cir. 2004). This Court must reject federal jurisdiction "if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.* 980 F.2d 564, 566 (9th Cir. 1992). Public policy supports a high burden of proof because a federal court's jurisdiction under the removal statutes constitutes an infringement upon state sovereignty. *Shamrock Oil Corp*, *supra*, 313 U.S. 100 at 108-109. Forcing this case into federal jurisdiction infringes upon California's state sovereignty because Vazquez does not assert any federal claims and at least one California citizen is appropriately named as a defendant. San Francisco County Superior Court is the appropriate forum for this action because the facts alleged occurred primarily in that county.

### B. <u>The Court Should Remand This Case Because Federal Subject Matter Jurisdiction Does Not Exist.</u>

#### 1. DataRobot's "Nerve Center" is Located in California Which Deprives this Court of Subject Matter Jurisdiction Without Regard to Wright.

For diversity purposes, a corporation may have dual citizenship: "[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and

4

of the State or foreign state where it has its principal place of business . . ." 28 U.S.C. § 1332(c)(1). The principal place of business means the corporation's "nerve center" or the place where a corporation's board and high-level officers direct, control and coordinate its activities. *Hertz Corp. v. Friend* (2010) 559 U.S. 77, 80-81. Typically, the "nerve center" is at the corporate headquarters, "provided that the headquarters is the actual center of direction, control and coordination. . . . ). *Id.,* p. 93; *see also Hoschar v. Appalachian Power Co.* (4th Cir. 2014) 730 F.3d 163, 172 (nerve center is where company's "officers make significant corporate decisions and set corporate policy" even if different location identified on company website and certain corporate decisions and policies and made elsewhere."). A corporation's nerve center is its only principal place of business for diversity and removal purposes. *Hertz, supra,* p. 96 ("if the bulk of a company's business activities visible to the public take place in New Jersey, while its top officers direct those activities just across the river in New York, the 'principal place of business' is New York"). The party underlying jurisdiction has the burden of proving the corporation's nerve center and the Court may require such allegations to be supported by a preponderance of evidence. *Id.*, pp. 96-97. The only evidence DataRobot presented to this Court about its "nerve center" is a conclusory sentence from a lower level employee that happens to work in the Boston office. *See* Dkt. No. 2 (Declaration of Amy Suchanek-Vacca) ("DataRobot's headquarters and principle executive offices are located in Boston, Massachusetts, which is where DataRobot performs the vast majority of its executive and administrative functions."). This single sentence is insufficient to establish that Boston in DataRobot's nerve center and is belied by contrary evidence.

According to Roy Ballard, a former DataRobot employee who worked in the Office of the Chief Executive Officer under both Jeremy Achin and Daniel Wright, there was a migration of the executive leadership from Boston and other locations to the San Francisco office that occurred following Wright's elevation to the CEO position. Declaration of Roy Ballard ISO Motion to Remand ("Ballard Decl."), ¶¶ 2-14. There are approximately 16 current and former executive level leaders that worked out of the San Francisco office while only up to two are known to be working out of the Boston office location. *Id., ¶¶* 8, 10, 12; *see also* Vandall Decl.,

5

Exhs. D-AC (LinkedIn Profiles of Executive Leaders from DataRobot showing that they work out of the San Francisco office location). Indeed, during Vazquez's time at DataRobot (which ended in May 2022), the Chief Executive Officer, the Chief Revenue Officer, the Chief Product Officer, the Chief Accounting Officer, the Chief Strategy Officer, the Vice President of Strategy, the Chief GTM Officer, the Chief People and Administrative Officer, the Chief of Staff to the CEO, the Chief Technology Officer – Platform, the Vice President of Shareholder Services, the Senior Vice President of Marketing and/or the Chief Marketing Officer, as well as the General Counsel and most of the legal department were all assigned to the San Francisco office. Declaration of Raquel Vazquez ISO Motion To Remand ("Vazquez Decl."), ¶3; *see also* Vandall Decl., ¶ 5 & Exhs. D-AC (LinkedIn Profiles); Ballard Decl., ¶8. Further, all Board meetings were migrated from the Boston area to California under Wright's leadership with at least five active members of the Board residing in California along with Wright. Ballard Decl., ¶13; *see also* Vazquez Decl., ¶¶ 3-6 (the primary location of all Board meetings under Wright's leadership was the San Francisco Bay Area). Per Mr. Ballard, through his extensive work in the Office of the San Francisco based CEO, San Francisco is, and was at all relevant times, the location where DataRobot's board and high level officers directed, controlled and coordinated its activities. *Id.*, ¶14; *see also* Vazquez Decl., ¶¶ 2-3. Because DataRobot's "nerve center" is actually based in California, DataRobot should be considered a domiciliary of both Delaware, where it is incorporated, and California, where its principal place of business is actually located. Such California citizenship destroys complete diversity without regard to Wright which means that this Court lacks subject matter jurisdiction because both Plaintiff and DataRobot are California citizens. The case must be remanded to the Superior Court on this ground. Alternatively, the Court should allow Plaintiff to engage in immediate discovery on the issue of the true location of DataRobot's "nerve center" before the motion to remand is decided.

**2. Dan Wright's Citizenship in California Destroys Complete Diversity.**

Regardless of DataRobot's citizenship, Wright is indisputably a California citizen and his status as a California domiciliary destroys complete diversity. Because Wright has now been

6

served with the summons and complaint (Dkt. #24), the Court no longer has subject matter jurisdiction over the case unless it determines that forum defendant Wright was fraudulently joined to prevent removal (discussed below) or there is a federal question presented in the complaint. It is clear from the complaint and the NOR that only state law claims are asserted; there is no federal question. NOR, ¶¶ 2-3 & Exh. A. It is also clear that forum Defendant Wright is domiciled in California along with Plaintiff. Vandall Decl., Exh. A (POS for Wright establishing his San Francisco residence); Notice of Removal, ¶ 6 (Plaintiff's residence and domicile in California are undisputed). This precludes complete diversity of citizenship which is required for a proper removal based on diversity jurisdiction. *See* 28 U.S.C. § 1332(a)(1) (requiring complete diversity of citizenship). Under 28 U.S.C. § 1447(c), the court <u>must</u> remand the case back to the state court "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction."; *see also International Primate Protection League v. Administrators of Tulane Educational Fund,* 500 U.S. 72, 87 (1991) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction [over a case removed from state court], the case shall be remanded."). *See also*, *Carper v. Adknowledge, Inc.*, 2013 WL 5954898, at *2 (N.D. Cal. 2013) ["Whenever federal jurisdiction in a removal case depends upon complete diversity, the existence of diversity is determined from the fact of citizenship of the parties named and not from the fact of service."] The Court may remand this case back to the Superior Court solely on the grounds that Section 1447(c) requires it now that Wright has been served and there is no dispute about his California citizenship.

C. **Recent Cases Out of the Northern District of California Reject the Snap Removal Procedure by Applying Ninth Circuit Precedent.**

DataRobot "snap-removed"[1] this case from the San Francisco Superior Court on diversity

---

[1] The act of filing a notice of removal prior to the service of one or more defendants has been referred to as a "snap removal" which asks the Court to disregard the actual citizenship of any local party that was not served by the time the removal notice was filed.

7

jurisdiction grounds by filing its Notice of Removal before Plaintiff had the opportunity to serve forum defendant Wright (a San Francisco resident) or DataRobot (a California domiciliary) with the summons and complaint. Vandall Decl., ¶ 3. DataRobot contends that the Forum Defendant Rule (28 U.S.C. § 1441(b)(2)) does not apply here (even though Wright did not file the notice of removal) because forum defendant Wright was not properly "joined and served" by the date the notice of removal was filed. Notice of Removal, ¶ 9. The only possible reason the Notice of Removal was filed prior to service of the complaint on Wright was to engage in procedural gamesmanship in trying to influence the forum in which this case can be heard or to inject unnecessary delay into these proceedings by requiring Plaintiff to file this motion to remand. Indeed, DataRobot potentially misled this Court by not discussing where its "nerve center" is actually located in its removal papers. In any event, DataRobot relies on just a few district court cases that have allowed the "snap removal" procedure to be used to establish diversity jurisdiction where there is a forum defendant that had not been served by the time the notice of removal was filed. NOR, ¶ 9 at p. 4:3-17. This interpretation is not applied uniformly in the Ninth Circuit or even within the Northern District of California. This Court, like the more recent Northern District decisions to consider snap removals (discussed below), should adopt the reasoning of *Clarence E. Morris, Inc. v. Vitek,* 412 F.2d 1174, 1176 (9th Cir. 1969) ("*Vitek*") and find that "[w]henever federal jurisdiction in a removal case depends upon complete diversity, the existence of diversity is determined from the fact of citizenship of the parties named and not from the fact of service."

In *Vitek,* the Ninth Circuit examined a removal petition from the Nevada state court where the plaintiff and one individual defendant both resided in California and the remaining defendant resided in Nevada. *Morris* filed a motion to remand which was denied by the District Court. *Id.* "At the time the District Court assumed jurisdiction, Vitek was unserved, but before the motion to dismiss was heard, Vitek had been served in Nevada." *Id.* One of the grounds relied upon by the District Court in supporting removal was that "Vitek's citizenship did not defeat diversity because he had not been served at the time the removal petition and the motion to remand were filed." *Id.*, p. 1176. The Ninth Circuit overruled the District Court by finding that rationale was

8

contrary to *Pullman Co. v. Jenkins* (1939) 305 U.S. 534. *Id. Pullman* states two rules:

> (1) A nonresident defendant cannot remove a 'nonseparable' action if the citizenship of any codefendant, joined by the Plaintiff in good faith, destroys complete diversity, regardless of service or nonservice upon the codefendant; (2) . . . Whenever federal jurisdiction in a removal case depends upon complete diversity, the existence of diversity is determined from the fact of citizenship of the parties named and not from the fact of service.

*Vitek*, 412 F.2d at 1176. The *Vitek* court further explained that "[o]ccasional holdings that unserved codefendants can be ignored in deciding removal petitions stem from the erroneous assumption that *Pullman* turned on a distinction between unserved nonresident defendants and unserved resident defendants, rather than upon want of diversity, and the further misassumption that 28 U.S.C. § 1441(b), by implication, expanded removal jurisdiction to permit removal, despite want of diversity, if a resident defendant whose presence would defeat diversity had not been served. *Id.*, n. 1. Recent decisions out of the Northern District of California apply *Vitek* in rejecting the snap removal procedure on diversity grounds.

In *Farrell by & Through Tr. Of Farrell Living Tr. V. JP Morgan Chase Bank, N.A.*, 4:20-CV-03709-YGR, 2020 WL 6318717, at *1 (N.D. Cal. Oct. 28, 2020) ("*Farrell*"), the Court granted a motion to remand following a snap removal by the JP Morgan defendants. "In their notice of removal, JP Morgan defendants admit[ted] that [certain forum defendants] were citizens of California" and contended that "diversity of citizenship exist[ed] for purpose of removal because [one forum defendant] had not been served by [the plaintiff] when [the JP Morgan Defendants] removed the action, and because the [remaining forum defendants] were fraudulently joined." *Id.* The JP Morgan Defendants first argument in support of removal was that "Johnson's California citizenship can be ignored for the purpose of determining whether diversity of citizenship exists; as [plaintiff] did not serve her within 60 days of the filing of the complaint." *Id.*, *2. The Northern District Court squarely rejected this argument on the ground that the 9th Circuit (in *Vitek*) "expressly rejected the notion that the citizenship of a defendant who has not been served can be ignored for the purpose of determining whether an action can be removed on the basis of 28 U.S.C. § 1332." *Id.*, *3 (citing *Vitek, supra,* 412 F.2d at 1176). The

9

District Court was persuaded not to apply the literal interpretation of Section 1441(b) "because complete diversity of citizenship did not exist at the time the complaint was filed and removal was effected." *Id.*, at *3. The Court was also persuaded by the fact that the plaintiff did not abandon her claims against the forum defendant at any time prior to the ruling on the motion to remand. *Id.*, *4. The same result should occur here. This Court should examine whether complete diversity existed at the time the complaint was filed (both with respect to DataRobot and Wright) and not with respect to when Wright was served in evaluating whether the Court has subject matter jurisdiction over the case. Notably, this decision was decided more recently than any of the authorities relied upon by DataRobot. Accordingly, it's logic should also apply here.

*J. Doe v. Mitchell* 2019 WL 1749521 (N.D. Cal. April 19, 2019) (Judge Haywood Gilliam, Jr.) is another more recent case out of the Northern District that refused to disregard *Vitek's* holding. Indeed, the *Mitchell* court relied upon both *Pullman* and *Vitek* in determining that "[w]henever federal jurisdiction in a removal case depends on complete diversity, the existence of diversity is determined from the fact of citizenship of the parties named and not from the fact of service." *Id.*, *2 (citing *Vitek*, 412 F.2d at 1176); *see also Matsuno v. Hoffman-La Roche, Inc.* 2019 WL 5079551 (N.D.Cal. Oct. 10, 2019) (Hon. James Donato) (dismissing the argument (under *Vitek*) that the citizenship of unserved defendants can be ignored because the notice of removal was filed before being served with the complaint).

In *Carper, supra,* the Honorable Judge Jon S. Tigar, also decided a motion to remand following a snap removal based on the guidance of *Vitek*. 2013 WL 5954898, *1-*2. The *Carper* plaintiffs did "not dispute that they had yet to serve [a local defendant] at the time of removal." *Id., *1*. Judge Tigar faced the same arguments that DataRobot presents here: that "[u]nder the plain language of the [Section 1441(b)(2)] and the weight of judicial authority – including at least three opinions by [The Northern District Court] – defendants that have not been properly served at the time of removal are ignored when determining whether to remand." *Id., *2*. Judge Tigar

noted that the cases cited by the Defendants[2] each involved situations where "the parties were completely diverse, and so there was no dispute that the actions could have been filed in federal court." 2013 WL 5954898, *2. Judge Tigar explained that "the question in those cases was whether an otherwise removable case must remain in state court because of the presence of a local defendant." *Id.* "It was in that context that those courts quoted Section 1441(b)'s 'joined and served' language." *Id.* Judge Tigar correctly observed, however, "[t]hat language suggests only that a defendant must be served before its status as a local defendant can block removal." *Id.*; citing *Stan Winston Creatures, Inc. v. Toys 'R' Us, Inc.*, 314 F.Supp.2d 177, 181 (S.D.N.Y.) ("the purpose of the 'joined and served' requirement is to prevent a plaintiff from blocking removal by joining as a defendant a resident party against whom it does not intend to proceed, and who it does not even serve"). Judge Tigar also correctly noted that this 'joined and served' language "has nothing to do with determining which named defendants count for purposes of establishing diversity of citizenship." *Id.* Judge Tigar also relied heavily upon *Vitek* in concluding that the precise argument advanced by DataRobot here, "does not support the propriety of removal." *Carper, supra,* 2013 WL 5954898, *1-*2. Plaintiff's motion to remand should be granted for the same reasons.

D. **Courts From the Central District of California Also Reject the Snap Removal Procedure.**

*Jennings-Frye v. NYK Logistics Americas Inc*. 2011 WL 642653 (C.D. Cal. Feb. 11, 2011) also supports remand based on a snap removal. In *Jennings-Frye*, the Central District Court allowed for a remand where the forum defendant had not been served at the time of removal. *Id.,*

---

[2] Two of the cited cases were (1) *Waldon v. Novartis Pharm. Corp.*, 2007 WL 174128 (N.D. Cal. June 18, 2007); and (2) *Regal Stone Ltd. v. Longs Drug Stores* Cal., LLC, 881 F.Supp.2d 1123, 1127 (N.D. Cal. 2012). These cases are relied upon heavily by DataRobot in its Notice of Removal. *See* Notice of Removal, p. 4:7-12). The only other case cited by DataRobot under the so-called Forum Defendant Rule is *Sherman v. Haynes & Boone*, No. 5:14-cv-01064-PSG, 2014 WL 4211118, which is distinguished below.

11

pp. *1-*2. The court noted that 28 U.S.C. "Section 1332 requires complete diversity of citizenship; each of the plaintiffs must be a citizen of a different state than each of the defendants." *Id.,* *2 (citing *Morris v. Princess Cruises, Inc.* 236 F.3d 1061, 1067 (9th Cir. 2001)). The *Jennings-Frye* court relied upon 28 U.S.C. § 1447(c) in granting the motion to remand. That section provides that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." *Id.* Section 1332's complete diversity requirement, Section 1447(c)'s requirement that complete diversity exist through final judgment, and Section 1441(b)'s local defendant rule are entirely different considerations for purposes of analyzing whether removal is proper. *Id.* Hence, even if the Court ignored Wright for purposes of removal under Section 1441(b), it cannot ignore the mandate of Sections 1332 and 1447(c) now that he has been served.

*Standing v. Watson Pharmaceuticals, Inc.,* 2009 WL 842211 (C.D. Cal. March 26, 2009) also supports remand following a snap removal. This case involved the only non-forum defendant removing the entire action on diversity grounds the day after the state court complaint was filed. *Id.*, *1. Like DataRobot, the removing defendant in *Standing* argued that removal was proper under 28 U.S.C. § 1441(b) "despite the presence of forum defendants in the action because none of the forum defendants had been served with the complaint prior to removal." *Id.* The Court began its analysis by noting that "[r]emoval of state actions is allowed only if the plaintiff could have originally filed the action in federal court." *Id.* (citing 28 U.S.C. § 1441). This prerequisite is not present in this case because of both DataRobot's actual dual citizenship and Wright's status as a California domiciliary. The *Standing* plaintiffs did not contest that the defendants were not served prior to removal, but they did amend their complaint and added a non-diverse plaintiff on the same day that they filed their motion to remand. *Id.*, *2. This action is comparable to effecting service on local defendant Wright prior to filing the motion to remand. The Central District court declined to rely on a literal interpretation of Section 1441(b) because such an interpretation "thwarts the purpose of Section 1441(b) and merely promotes gamesmanship on the part of removing defendants." 2009 WL 842211, *3. The court found

12

that "Section 1441(b) is not implicated where the non-forum defendant (or forum defendant) seeks to remove the action prior to the service of any defendant." *Id.,* *3 (citing *Holmstrom v. Harad*, 2005 WL 1950672, at *2 (N.D. Ill. Aug. 11, 2005) (finding that "the policy of the 'joined and served' requirement is not implicated in this situation … When no defendant has been served, however, the non-forum defendant stands on equal footing as the forum defendant . . . [T]he protection afforded by the 'joined and served' requirement is wholly unnecessary for an unserved forum defendant.").

The Court should apply the more recent decisions out of the Northern District and the logic behind these Central District decisions and grant the motion to remand.

### E. **The Older Cases Relied Upon by DataRobot in Support of Ignoring Wright's Citizenship Should Not be Followed.**

DataRobot relies upon *Sherman v. Haynes and Boone* 2014 WL 4211118 (N.D. Cal. 2014) for the proposition that "a defendant may remove an action prior to receiving proper service, even when the defendant resides in the state in which the plaintiff filed the state claim." NOR, p. 4:13-16. This case does not stand for the proposition that the residence of a forum defendant can be ignored when evaluating diversity jurisdiction. Indeed, the Court left open the question as to whether complete diversity existed by authorizing the plaintiffs "to engage in immediate discovery as to the issue of diversity jurisdiction." 2014 WL 4211118, *2. Further, none of the defendants were served with the summons and complaint by the time the motion to remand was heard (*id.*, *2) which is factually distinguishable from this case. In other words, the issue of complete diversity remained an open question at the time the motion to remand was filed. That is not the case here although it may be necessary to conduct limited discovery on DataRobot's "nerve center" to assure this Court that subject matter jurisdiction is lacking.

DataRobot also relies on *Regal Stone Ltd. v. Longs Drugs Stores Cal.*, *LLC*, 881 F. Supp.2d 1123, 1127 (N.D. Cal. 2012) for the proposition that courts in the Northern District "hold that the clear and unambiguous language of the statute only prohibits removal after a properly joined forum defendant has been served." Notice of Removal, p. 4:7-10. This case is

7-8 years older than the more recent Northern District Court decisions described above and should not be followed because they do not reflect the current reasoning applied by multiple judges in the District under *Vitek.* Indeed, this case wholly ignored *Vitek* which is controlling on how the issue of diversity should be resolved in a snap removal case. Moreover, the complaint in this case was originally filed under seal for medical privacy reasons and the plaintiffs were waiting upon a ruling on the motion to seal prior to serving the complaint. *Id.*, p. 1125. The case also involved foreign plaintiffs. *Id.* Further, service was not attempted by the time the motion to remand was decided. *Id.*, p. 1126 (Plaintiffs acknowledged that they served none of the defendants, including the forum defendant). Hence, the requirements of 28 U.S.C. § 1447(c) were not at issue as they are here. This case should be disregarded for these reasons.

Finally, DataRobot relies upon *Waldon v. Novartis Pharmaceuticals Corp.*, 2007 WL 1747128 (N.D. Cal. June 18, 2007) for the same proposition. This case was decided 12-13 years before the precedents Plaintiff relies upon above. It also ignores *Vitek* completely. Further, the case could have been originally filed in federal court on diversity grounds because the Plaintiff was from Georgia and the Defendants were from New York, New Jersey, Delaware and California. 2007 WL 174128, *1. Judge Tigar recognized this in *Carper. Carper, supra,* 2013 WL 5954898, *2 (noting that this case could have been filed originally with the federal court). The operative complaint in this case is inapposite because it alleges only state-based claims for relief by a local Plaintiff against two local Defendants. The complaint could not have been filed originally in federal court and this fact cannot be ignored under *Vitek* which mandates that "[w]henever federal jurisdiction in a removal case depends upon complete diversity, the existence of diversity is determined from the fact of citizenship of the parties named and not from the fact of service." *Vitek*, 412 F.2d at 1176.

Plaintiff urges the Court to reject DataRobot's authorities and apply the more recent analysis of at least four other Northern District of California Judges on this issue.

///

///

14

**F.** **Wright Was Not Fraudulently Joined To Prevent Removal.**

**1.** **The fact that Vazquez remained employed after learning about Wright's falsehoods does not preclude her reliance upon those falsehoods.**

Defendants argue that Vazquez could not have relied upon Wright's misrepresentations because she remained there even after learning of their falsity. NOR, p. 6:1-7. In effect, defendants argue that a misled employee must immediately quit their job upon learning that they were misled in order to preserve their right to rely upon the misrepresentations. However, that would place an unreasonable financial burden upon the plaintiff because she would be unemployed and ineligible for unemployment benefits. More to the point, defendants failed to proffer relevant authority in support of their claimed obligation.

Defendants cite *Rochlis v. Walt Disney Co.*, 19 Cal. App. 4th 201, 215-16 (1993), for the proposition that, "It is settled law that an employee cannot claim detrimental reliance where the employee subsequently discovers the truth of the misrepresentations, but nevertheless decides to remain employed anyways." However, that phrase, taken out of context, misrepresents *Rochlis*. There, the plaintiff was a senior executive under contract to the Walt Disney Company until April 1988. *Id.* at 215. Sometime prior to October 1987, Rochlis became unhappy with his position and requested a new one. *Id.* at 207. In response, Disney offered him a position as the executive vice president of Walt Disney Imaging ("WDI"). *Ibid.* On October 6, 1987, Rochlis began his new job. By January 1988, while he was still under contract, Rochlis learned that he had been misled about the WDI job. *Id.* at 215. Rochlis later complained about his pay and was given a $100,000 special bonus and, later, his salary was increased to $250,000 plus a discretionary bonus. *Id.* at 209. On January 27, 1989, Rochlis resigned. *Ibid.* The following year he took a job with King World, which was significantly more financially lucrative than his job at Disney. *Ibid.* After just seven months in that job, he resigned, claiming that he had been constructively discharged. He settled with King World then filed this action against Disney on October 31, 1990, claiming that it had fraudulently misled him about the WDI position. *Ibid.* The *Rochlis* court found that Rochlis could not have relied upon the misrepresentations because, even after learning of their falsity, he

15

remained there for nine months beyond the expiration of his contractual commitment. *Ibid.* It was Rochlis' affirmative act of remaining after his contract expired and profiting from the new position that deprived him of reliance. Nowhere did the *Rochlis* court state, or even infer, that a misled employee must quit their job in order to have relied upon pre-employment misrepresentations, as defendants argue.

This is supported by the *Rochlis* court's reliance upon *Mercer v. Elliott,* 208 Cal.App.2d 275, 279 (1962) and *Carpenter v. Hamilton,* 18 Cal.App.2d 69, 71-72 (1936). *Rochlis v. Walt Disney Co., supra,* 19 Cal. App. 4th 201 at 215. *Mercer* involved representations made in the course of purchasing an airplane. The plaintiff made a limited, cursory inspection of the airplane the day before purchasing it. The next month, the plaintiff discovered the plane's true condition. The court ruled that the plaintiff was justified in relying upon the defendant's prior representations. "It is only where a party to whom a representation is made **has the means at hand for determining its truth or falsehood and resorts to such means**, without interference by the other party, and after investigation learns that the statement was false, **that he is precluded from asserting that he relied upon the representation**." *Mercer v. Elliott, supra,* 208 Cal.App.2d 275 at 279 (emphasis added). When DataRobot's recruiters repeated Wright's misrepresentations to Vazquez, she lacked the means for determining their truth; she was unable to do so until after she began working there. Therefore, per *Mercer*, she is not precluded from relying upon the misrepresentations.

Similarly, in *Carpenter v. Hamilton, supra,* 18 Cal.App.2d 69, which involved representations about real estate, the plaintiffs inspected the property prior to making the purchase. The court explained that "**Plaintiffs had a right to rely upon the representations made to them concerning matters of fact which were unknown to them, without making any inquiry concerning the truth thereof,** and had they done so **defendant could not evade the consequences of any false and fraudulent statements** he may have made by showing that means of knowledge of the truth were easily available to plaintiffs." *Id.* at 71, emphasis added. This is the position Vazquez was in during the pre-employment interviews wherein DataRobot's

recruiters repeated Wright's misrepresentations. In *Carpenter*, the plaintiffs had inspected the property prior to purchase and, therefore, were precluded from claiming reliance upon the misrepresentations. But that is not the case here.

*Hall v. FedEx Freight, Inc.*, 2015 WL 574177 (E.D. Cal., 2015), also supports Vazquez's reliance. There, a FedEx driver remained with the company after discovering that he had been misled. FedEx argued that, under *Rochlis*, the plaintiff could not establish reliance. However, the *Hall* court distinguished *Rochlis* on the grounds that Rochlis enjoyed significant ability to negotiate his pay and bonus structure; his transfer did not negatively affect his pay; and his executive position enabled him to move into a new job in a way that Hall (and Vazquez) could not. The court concluded that Hall's decision to remain with FedEx even after discovering the "truth" did not negate actual reliance as a matter of law. *Hall v. FedEx Freight, Inc., supra,* 2015 WL 574177 at *16.

### 2. Wright is liable for his prior misrepresentations because he intended and expected them to be repeated to prospective employees like Vazquez.

Defendants argue that Wright isn't liable to Vazquez for his misrepresentations because he made them prior to Vazquez becoming a prospective employee. NOR, 6:18-19. However, that is incorrect. Vazquez alleges that, prior to her becoming a prospective employee, Wright "began instructing recruiters and hiring agents to provide information about the company that he knew or should have known to be false, or which he had no reasonable basis to believe, and/or was reckless to the falsity of." Complaint ¶ 18. Wright intended and expected that his misrepresentations would be repeated to prospective hires like Vazquez. In *Bily v. Arthur Young & Co.*, 3 Cal.4th 370 (1992), an investor, who was not a client of the auditor, sued the auditor over alleged misrepresentation in an audit. The *Bily* court concluded that, although an auditor generally doesn't owe a duty of care other than to its client, it may be liable for negligent misrepresentations to those persons who act in reliance upon the misrepresentations whom the auditor intended to influence and may also be liable to reasonably foreseeable third persons for intentional fraud in the preparation of the audit. *Id.* at 376.

17

Wright, like the auditor in *Bily*, made representations based on false or materially misleading facts to his recruiters that he intended for them to repeat to prospective employees like Vazquez, so that they would be influenced to accept positions at DataRobot. Therefore, he is liable for both negligent and intentional misrepresentation for his misrepresentations.

### 3. Vazquez's Claim for Intentional Misrepresentation Alleges Actionable Misrepresentations.

DataRobot argues that Wright was fraudulently joined to the second cause of action because "the alleged representations are Wright's opinions, not facts . . . ." NOR, p. 7:17-25. However, while DataRobot is correct as to some of the misrepresentations, others are based upon *existing* material facts, and therefore actionable. For example, Vazquez's alleges she was told that "DATAROBOT's finances looked solid for an IPO." Complaint ¶ 18(a). This is a representation of DataRobot's *existing* financial condition. She was also told that DataRobot was "fast tracking" the IPO. Complaint ¶ 18(b). This is a representation of DataRobot's *existing* conduct. Vazquez alleged numerous reasons these representations were false at the time they were made. However, the falsity of the representations is not at issue at this juncture, only that Vazquez alleged misrepresentations of *existing* facts and that she relied upon these misrepresentations in making her decision to quit her job at Cicso to join DataRobot. Since she relied upon representations of *existing* facts, Wright was not fraudulently joined to claim for intentional misrepresentation.

### 4. Wright Was Not Fraudulently Joined To Vazquez's Third Cause of Action for Misrepresentation by Concealment.

DataRobot argues that Wright was fraudulently joined to Vazquez's Third Cause of Action because Wright did not owe her any legal duty when he made the false statements of fact. NOR, pp. 8:8-9:2. In support, it cites federal cases holding that employment does not create a fiduciary duty. *Ibid.* However, DataRobot ignores the fact that a non-fiduciary *transactional* relationship may also impose a duty of disclosure.

In *LiMandri v. Judkins*, 52 Cal. App. 4th 326 (1997), a borrower sued its lender over a

18

loan transaction, alleging that the lender owed the borrower a duty of disclosure. The court ruled that even without a fiduciary relationship, parties to a transaction, such as an employment relationship, have a duty to disclose information not known to the other party. "**A duty to disclose may arise from the relationship between** seller and buyer, **employer and prospective employee**, doctor and patient, or parties entering into any kind of contractual agreement. (Civ.Code, § 1572, subd. 3.)" *Id.* at 337, emphasis added.

California Civil Code section 1572, states in relevant part that a party to a contract who has knowledge or belief of a fact, but suppresses it in order to induce the other party to enter into the contract, has committed actual fraud. That is the situation at bar. Vazquez alleges that, at the time DataRobot's recruiter told her that "DataRobot's finances looked solid for an IPO" and that it was "fast tracking" an IPO, DataRobot knew that it wasn't ready for an IPO (Complaint ¶17(a)); multiple lawsuits and a National Labor Relations Board complaint were hanging over the company's head (Complaint ¶¶ 17(b), (c)); steps necessary to ensure compliance with the Sarbanes-Oxley Act ("SOX") had either not been initiated or were in their infancy (Complaint ¶ 17(d)); and that DataRobot's contract with the U.S. Department of Health and Human Services, which provided a significant percentage of revenue upon which the IPO was based, could no longer be relied upon (Complaint ¶ 17(e)). Vazquez alleges that, despite this knowledge, of which she was unaware, DataRobot concealed this information from her during the hiring process in order to induce her to quit her job at Cisco and come to work at DataRobot. Complaint ¶¶ 69-72. This is actionable concealment under California substantive law, which applies to this case.

Some of the information, e.g. the multiple lawsuits and National Labor Relations Board complaint, was publicly available. DataRobot argues that pursuant to *Magpali v. Farmers Group, Inc.*, 48 Cal. App. 4th 471, 482 (1996), publicly-available information cannot form the basis of a concealment claim. NOR, p. 9:3-17. Some of the above information, e.g. the multiple lawsuits and National Labor Relations Board complaint, was publicly available. *Magpali* is distinguishable, however, because the documents weren't merely accessible there, the plaintiff "was expected to study it as part of his training." *Magpali v. Farmers Group, Inc., supra,* 48 Cal.

NOTICE OF MOTION AND MOTION
TO REMAND [3:22-CV-07619-LB]

App. 4th 471, at 482. That is not the case here. Vazquez was not expected to review DataRobot's pending lawsuits or other evidence regarding its positioning for an IPO as part of her training or in deciding whether to accept the job. *Magpali* does not support DataRobot's argument that the mere existence of information in the public domain precludes a prospective hire from relying upon the employer's representations. Moreover, the lawsuits speak to the financial instability of DataRobot which were a major component of the actual factual misstatements upon which Plaintiff relied.

The lack of any requirement to investigate contractual representations is also supported by *Carpenter*: "Plaintiffs had a right to rely upon the representations made to them concerning matters of fact which were unknown to them, without making any inquiry concerning the truth thereof." *Carpenter v. Hamilton, supra,* 18 Cal.App.2d 69, at 71.

### 5. Wright Was Not Fraudulently Joined to Vazquez's Fourth Claim for Negligent Misrepresentation.

DataRobot argues that Wright was fraudulently joined to her fourth claim for relief that Vazquez's Fourth Cause of Action should be dismissed because it is predicated on the same unactionable opinions as her intentional misrepresentation claim. NOR, p. 9:23-10:5. However, as explained above as to Vazquez's Second Cause of Action for Intentional Misrepresentation, at least some of the misrepresentations were related to *existing* facts, and are therefore actionable. The promise of the future IPO was based on the presence of existing misstatements of fact that Wright had no reasonable ground for believing at the time the promises were made. A case in point is that the HHS contract was wrongfully classified as Annually Recurring Revenue even though there was no reasonable basis at the time to believe that the contract would be renewed. Ballard Decl., ¶¶15-19 (explaining why classifying the HHS contract as recurring revenue and including it as part of the false projections was unreasonable).

///

///

### G. Even if the Court finds that Vazquez's fraud claims were insufficiently pled, remand is still proper because she can amend her claims.

Even if the Court finds that Vazquez's claims are not sufficiently pled, defendants have failed to establish that she cannot amend her Complaint to allege sufficient details. In light of the "strong presumption against removal jurisdiction," a defendant seeking removal based on an alleged fraudulent joinder must do more than show that the complaint at the time of removal fails to state a claim against the non-diverse defendant. The defendant must also show that "there is no possibility that the plaintiff could prevail on any cause of action it brought against the non-diverse defendant." Remand must be granted unless the defendant shows that the plaintiff "would not be afforded leave to amend his complaint to cure [the] purported deficiency." *Padilla v. AT&T Corp., supra,* 697 F.Supp.2d 1156 at 1159. Defendants failed to even argue—let alone establish—that Vazquez cannot amend her Complaint to sufficiently allege fraud and intentional infliction of emotional distress.

Additionally, merely showing that an action is likely to be dismissed against that defendant does not demonstrate fraudulent joinder. Rather, it must appear to "a near certainty" that joinder was fraudulent. *Amarant v. Home Depot U.S.A., Inc.* 2013 WL 3146809, at *6 (E.D. Cal. 2013). Since defendants have failed to meet that burden, this case should be remanded to state court.

### H. Vasquez's Ninth Cause of Action for Intentional Infliction of Emotional Distress Can Be Cured by Amendments.

DataRobot argues that Wright was fraudulently joined to the ninth cause of action because the claim is barred by the workers' compensation exclusivity rule. However, that only applies to actions that are "a normal part of the employment relationship." In *Livitsanos v. Superior Ct.,* 2 Cal. 4th 744, 756 (1992), the California Supreme Court quoted *Renteria v. Cnty. of Orange,* 82 Cal. App. 3d 833 (1978) for the proposition that "mental suffering without accompanying physical injury or disability, was not a compensable [Workers' Compensation] injury." The *Livitsanos* court further cited with approval *Renteria's* conclusion that "the cause of action for

intentional infliction of emotional distress constituted an implied exception to workers' compensation exclusivity under conditions where the 'essence of the tort, in law, was non-physical.'" *Livitsanos v. Superior Ct.*, *supra,* 2 Cal. 4th 744 at 756. Since Vazquez has not alleged physical injuries, DataRobot's argument, which is in derogation of settled law, should be disregarded.

Moreover, Vazquez should be granted leave to amend more specific facts against Wright that support her IIED claim before concluding that Wright was fraudulently joined to this count. That issue should be decided by the Superior Court in light of the lack of subject matter jurisdiction in this case. Liberality in amendment is common in state court and the lack of more specific irreprehensible conduct in the current iteration of the complaint should not foreclose the possibility that additional facts could be added to support it. Vazquez must be given an opportunity to add additional details in support of this claim.

### I. The court should rule on plaintiff's motion to remand before any dispositive motion because subject matter jurisdiction is the threshold issue.

In a unanimous decision, the U.S. Supreme Court acknowledged that federal courts must decide jurisdiction before taking adjudicative action. "In most instances, subject-matter jurisdiction will involve no arduous inquiry, and both expedition and sensitivity to state courts' coequal stature should impel the federal court to dispose of that issue first." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 576 (1999). In *Ruhrgas*, the Court found that in the context of two competing threshold issues – in that case personal and subject-matter jurisdiction – district courts generally should decide subject matter jurisdiction first. "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "A federal court generally may not rule on the merits of a case without first determining that it has jurisdiction." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007).

As the Ninth Circuit explained, "Challenges to the court's power to rule must of necessity be determined before the court may rule on the merits." *Toumajian v. Frailey*, 135 F. 3d 648, 657-58 (9th Cir. 1998). See also, *Wayne v. DHL Worldwide Express*, 294 F.3d 1179, 1185 (9th

22

Cir. 2002) ["Because the district court lacked jurisdiction, the judgment of the district court dismissing the action is REVERSED and REMANDED with instructions to remand the case to the California state court."]

In recent Northern District decisions involving multiple, simultaneously filed motions, judges have prioritized subject matter jurisdiction over all else. In *Grancare, LLC v. Thrower*, 2016 WL 1082780, at *5 (N.D. Cal. 2016), aff'd sub nom. *Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543 (9th Cir. 2018), the District Court addressed prioritization of a motion for remand relative to a motion to disqualify plaintiff's counsel:

> Although our court of appeals has never addressed the sequence in which a district court should rule on a jurisdictional motion versus a motion to disqualify counsel, **every district court that has faced the issue has ruled on the jurisdictional issue first**. That is, every district court that has granted a motion to remand while also facing a motion to disqualify has deferred the disqualification motion to the state court because the district court lacked jurisdiction to decide it. Emphasis added.

Finally, in *Osborne v. MetLife,* 341 F.Supp.2d 1123 (E.D. Cal 2004), the court held that the motion to remand must be addressed prior to the fraudulent misjoinder issue because the standards are different in federal and state court. The pleading standard in federal court is different from that in California state court, and therefore a dispositive motion to dismiss a claim (or cause of action) pled is likewise analyzed differently depending on which court has jurisdiction. In federal court, plaintiff's complaint only requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. Rules Civ.Proc., rule 8(a)(2). However, a motion to dismiss is considered under the *Twombly/Iqbal* standard which requires the plaintiff plead plausive facts to support a claim. See *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007) (holding that plaintiffs in antitrust actions must plead "plausible grounds" that defendants actually made an agreement to restrain trade rather than merely engaging in parallel conduct); *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (holding that the *Twombly* standard applies to all claims for relief, and that in determining the sufficiency of complaint, district courts should disregard legal

23

conclusions and instead determine whether the factual allegations "plausibly give rise to an entitlement for relief").

In contrast, California state courts require a plaintiff to plead facts sufficient to constitute a cause of action. A challenge to the sufficiency of plaintiff's pleadings would face a demurrer; there, the court would have to accept the complaint's allegations at face value without applying a plausibility standard. "As a general rule in testing a pleading against a demurrer the facts alleged in the pleading are deemed to be true, however improbable they may be." *Del E. Webb Corp. v. Structural Materials Co.*, 123 Cal. App. 3d 593, 604 (1981). Moreover, California state courts liberally allow amendment following a sustained demurrer, even if the plaintiff already had a prior opportunity to amend her complaint. "Liberality in permitting amendment is the rule." *Angie M. v. Superior Court*, 37 Cal. App. 4th 1217, 1227 (1995).

Since this Court cannot rule on the merits of plaintiff's claims if it lacks jurisdiction, and since, if were to do so, the standard by which it would evaluate them would be different than in state court, this Court should remand this case back to the Superior Court.

### J. **Alternatively, Plaintiff Should Be Allowed Discovery On The Topic of DataRobot's Nerve Center Before the Motion to Remand is Decided.**

As discussed above, Plaintiff requests an alternative order from this Court. If the Court is not able to remand based on the current evidence before it regarding DataRobot's actual citizenship, it should allow Plaintiff immediate discovery on the issue of diversity of citizenship to determine DataRobot's actual principal place of business. *See Sherman v. Haynes and Boone* 2014 WL 4211118, *2 (N.D. Cal. 2014). *Sherman* is one of the authorities cited in DataRobot's NOR and should be followed for this limited proposition.

///

///

///

24

## CONCLUSION

For all of the reasons stated above, this case should be remanded to California state court, where defendants can bring their motion to dismiss certain claims under California state standards.


DATED: January 6, 2023          WINER, BURRITT & SCOTT, LLP

By: _____
           Matthew P. Vandall, Esq.
           Attorneys for Plaintiff
           RAQUEL VAZQUEZ