1  John D. Winer, Esq. (SBN: 91078)
   Matthew P. Vandall, Esq. (SBN: 196962)
2  WINER, BURRITT & SCOTT, LLP
   1901 Harrison Street, Suite 1100
3  Oakland, CA 94612
   Tel: 510.543.1000
4  Fax: 510.433.1001
5  Email: matthew@wmlawyers.com

6  Attorneys for Plaintiff
7  Raquel Vazquez

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10 

11 RAQUEL VAZQUEZ,                          Case No. 3:22-cv-07619-LB

12         Plaintiff,                       **PLAINTIFF RAQUEL VAZQUEZ'S OPPOSITION TO DEFENDANT DAN WRIGHT'S MOTION TO DISMISS**

13     vs.

14 DATAROBOT, INC.; DAN WRIGHT;             Judge: Hon. Laurel Beeler
15 and DOES 1 through 20, inclusive,        Ctrm.: B
                                            Date:  March 2, 2023
16         Defendants.                      Time:  9:30 a.m.
17 

18 

19     **TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**
20 

21     PLEASE TAKE NOTICE plaintiff Raquel Vazquez hereby opposes defendant
22 Dan Wright's Motion to Dismiss.

23 

24 

25 

26 

27

**TABLE OF CONTENTS**

I. INTRODUCTION ....................................................................................................... 4

II. LEGAL ARGUMENT ................................................................................................ 4

    A. WRIGHT MISSTATES THE CERTAIN LEGAL STANDARDS ................... 4

    B. REMAINING ON THE JOB AFTER LEARNING OF THE MISREPRESENTATIONS DID NOT DEPRIVE VAZQUEZ OF DETRIMENTAL RELIANCE ............................................................................................................. 4

    C. VAZQUEZ AGREES THAT HER CLAIM FOR FRAUD IN INDUCMENT SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND ............................. 7

    D. WRIGHT MISCHARACTERIZES HIS STATEMENTS REGARDING EXISTING EVENTS AS UNACTIONABLE OPINIONS REGARDING FUTURE EVENTS ....................................................................................................... 7

    E. WRIGHT OWED VAZQUEZ A DUTY OF DISCLOSURE DESPITE THE LACK OF A FIDUCIARY RELATIONSHIP ...................................................... 10

    F. VAZQUEZ ALLEGED ACTIONABLE NEGLIGENT MISREPRESENTATION ................................................................................ 13

    G. VAZQUEZ AGREES THAT HER INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM AGAINST WRIGHT SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND ................................................... 14

    H. VAZQUEZ HAS SUFFICIENTLY PLED SUFFICIENT FACTS TO SUPPORT HER REQUEST FOR PUNITIVE DAMAGES ................................ 14

    I. IF THE COURT FINDS THAT ANY OF VAZQUEZ'S CAUSES OF ACTION ARE INSUFFICIENTLY PLED, SHE IS ENTITLED TO LEAVE TO AMEND THEM ....................................................................................................... 15

III. CONCLUSION ....................................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................. 4

*Bell v. Fed. Home Loan Mortg. Corp.,* 2012 WL 4576584 (2012) ............................. 11, 12

*Carpenter v. Hamilton,* 18 Cal.App.2d 69 (1936) ....................................................... 5, 6, 13

*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (2003) ........................................ 15

*Evenfe v. Esalen Inst.*, 2016 WL 3965167 (2016) ............................................................... 10

*Foman v. Davis*, 371 U.S. 178 (1962) .................................................................................. 15

*Hall v. FedEx Freight, Inc.*, 2015 WL 574177 (2015) .......................................................... 6

*LiMandri v. Judkins*, 52 Cal. App. 4th 326 (1997) ............................................................. 12

*Los Angeles Memorial Coliseum Com. v. Insomniac, Inc.*, 233 Cal.App.4th 803 (2015) 11

*Mercer v. Elliott,* 208 Cal.App.2d 275 (1962) .................................................................. 5, 6

*National Council of La Raza v. Cegavske* 800 F.3d 1032, 1041 (2015) ........................... 15

*Neu-Visions Sports, Inc. v. Soren/McAdam/Bartells,* 86 Cal.App.4th 303 (2000) ............. 9

*Pub. Employees' Ret. Sys. v. Moody's Invs. Serv., Inc.,* 226 Cal. App. 4th 643 (2014) ..... 9

*Rescuecom Corp. v. Google Inc.,* 562 F.3d 123, 127 (2009) ............................................. 11

*Rochlis v. Walt Disney Co.*, 19 Cal. App. 4th 201 (1993) ............................................ 4, 5, 6

*Rubinstein v. SAP AG*, 2012 WL 726269 (2012) .................................................................. 4

*Wyatt v. Union Mortg. Co.*, 24 Cal. 3d 773, 785 (1979) ................................................ 8, 11

**Statutes**

Civil Code, § 1572 ............................................................................................................ 4, 12

## I. INTRODUCTION

The gravamen of Wright's motion is that Vazquez's complaint fails to provide sufficiently detailed allegations to support her causes of action. Vazquez disagrees but, even if the Court agrees with Wright, Vazquez is entitled to leave to amend her Complaint to add the missing information.

## II. LEGAL ARGUMENT

### A. WRIGHT MISSTATES CERTAIN LEGAL STANDARDS

Wright inaccurately claims that *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) stated that "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer *probability* that a defendant has acted unlawfully." (Dckt No. 33 (Motion To Dismiss), at p. 4:1-2) (emphasis added). However, that misquotes the authority. *Iqbal* actually stated that plausibility standard asks for more than a sheer *possibility* of an unlawful act. *Id. Possibility* is a far lower threshold than *probability*.

Wright further claims that Civil Code section 1572 "applies only to fraud 'committed by a party to the contract.'" Motion 11:1. But Wright omits a key phrase that directly applies to this case. Section 1572 actually states that it applies to acts committed by a party to the contract, "*or with his connivance*." (emphasis added). That phrase is critical because Vazquez alleges that the fraud was committed with Wright's connivance.

### B. REMAINING ON THE JOB AFTER LEARNING OF THE MISREPRESENTATIONS DID NOT DEPRIVE VAZQUEZ OF DETRIMENTAL RELIANCE

Wright argues that "it is settled law that an employee cannot claim that she actually relied on any misrepresentations where the employee subsequently discovers the truth of the misrepresentations, but nevertheless decides to remain employed anyways," citing *Rochlis v. Walt Disney Co.*, 19 Cal. App. 4th 201, 215-16 (1993) and *Rubinstein v. SAP AG*, 2012 WL 726269, at *6 (N.D. Cal. Mar. 1, 2012). Motion 8:13-18. However, that misrepresents *Rochlis* (and *Rubinstein* merely cites *Rochlis*). There, the plaintiff was a

senior executive under contract to the Walt Disney Company until April 1988. *Id.* at 215. Sometime prior to October 1987, Rochlis became unhappy with his position and requested a new one. *Id.* at 207. In response, Disney offered him a position as the executive vice president of Walt Disney Imaging ("WDI"). *Ibid.* On October 6, 1987, Rochlis began his new job. By January 1988, while he was still under contract, Rochlis learned that he had been misled about the WDI job. *Id.* at 215. Rochlis later complained about his pay and was given a $100,000 special bonus and, later, his salary was increased to $250,000 plus a discretionary bonus. *Id.* at 209. On January 27, 1989, Rochlis resigned. *Ibid.* The following year he took a job with King World, which was significantly more financially lucrative than his job at Disney. *Ibid.* After just seven months in that job, he resigned, claiming that he had been constructively discharged. He settled with King World then filed this action against Disney on October 31, 1990, claiming that it had fraudulently misled him about the WDI position. *Ibid.* The *Rochlis* court found that Rochlis could not have relied upon the misrepresentations because, even after learning of their falsity, he remained there for nine months beyond the expiration of his contractual commitment. *Ibid.* It was Rochlis' affirmative act of remaining after his contract expired and profiting from the new position that deprived him of reliance. Nowhere did the *Rochlis* court state—or even infer—that a misled employee must quit their job in order to have relied upon pre-employment misrepresentations, as defendants argue. Such a reading would render it nearly impossible for any defrauded employee to sue for misrepresentation given that they would have to relinquish their source of income by resigning in order to file suit. There is no such requirement under the law.

      This is supported by *Rochlis*' reliance upon *Mercer v. Elliott,* 208 Cal.App.2d 275, 279 (1962) and *Carpenter v. Hamilton,* 18 Cal.App.2d 69, 71-72 (1936). *Mercer* involved representations made in the course of purchasing an airplane. The plaintiff made a limited, cursory inspection of the airplane the day before purchasing it. The next month, the plaintiff discovered the plane's true condition. The court ruled that the plaintiff was

justified in relying upon the defendant's prior representations. "It is only where a party to whom a representation is made **has the means at hand for determining its truth or falsehood and resorts to such means**, without interference by the other party, and after investigation learns that the statement was false, that he is precluded from asserting that he relied upon the representation." *Mercer v. Elliott, supra,* 208 Cal.App.2d 275 at 279, emphasis added. Similarly, the *Carpenter* court held that "Plaintiffs had a right to rely upon the representations made to them concerning matters of fact which were unknown to them, without making any inquiry concerning the truth thereof." *Carpenter v. Hamilton, supra,* 18 Cal.App.2d 69 at 71.

When the Datarobot recruiters repeated Wright's misrepresentations to Vazquez, she lacked the means for determining their truth; she was unable to do so until after she began working there. Moreover, even if she had the means to learn of the misrepresentations, it's undisputed that she did not resort to those means. Therefore, per *Mercer* and *Carpenter*, she is entitled to rely upon the misrepresentations.

*Hall v. FedEx Freight, Inc.*, 2015 WL 574177 (E.D. Cal., 2015), also supports Vazquez's reliance. There, a FedEx driver remained with the company after discovering that he had been misled. FedEx argued that, under *Rochlis*, the plaintiff could not establish reliance. However, the *Hall* court distinguished *Rochlis* on the grounds that Rochlis enjoyed significant ability to negotiate his pay and bonus structure; his transfer did not negatively affect his pay; and his executive position enabled him to move into a new job in a way that Hall (and Vazquez) could not. The court concluded that Hall's decision to remain with FedEx even after discovering the "truth" did not negate actual reliance as a matter of law. *Id.* at *16.  The same result should be reached here with respect to Plaintiff.

### C. VAZQUEZ AGREES THAT HER CLAIM FOR FRAUD IN INDUCEMENT SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND

Vazquez agrees with Wright that her First Cause of Action for Fraud in Inducement should be dismissed without leave to amend. However, Wright unfairly castigates Vazquez for conceding that one of her causes of action is fatally flawed instead of wasting time trying to save it. "Perhaps most tellingly, even Plaintiff herself agrees 'with DataRobot that her First Cause of Action for Fraud in Inducement should be dismissed without leave to amend.'" Motion 5:24-26. As if Vazquez's candor calls into question the viability of her other, unrelated claims. But candor avoids wasted time and permits the Court to focus on the real issues.

### D. WRIGHT MISCHARACTERIZES HIS STATEMENTS REGARDING EXISTING EVENTS AS UNACTIONABLE OPINIONS REGARDING FUTURE EVENTS

Wright argues that Vazquez's Second Cause of Action for Intentional Misrepresentation should be dismissed because it fails to allege an actionable misrepresentation, i.e. a misrepresentation pertaining to past or existing material facts rather than predictions of future events. Motion 6:3-9:11. However, Vazquez alleges she was told that "DATAROBOT's finances looked solid for an IPO." Complaint ¶ 18(a). This is a representation of Datarobot's *existing* financial condition. In contrast, the representation that "the IPO would be launched later in 2021" is a prediction of a future event, i.e. an unactionable opinion. Vazquez was also told that Datarobot was "fast tracking" the IPO. Complaint ¶ 18(b). This is a representation of Datarobot's *current* conduct. Whether or not an IPO would actually occur is an opinion as to a future event,

but Datarobot's then-current conduct is actionable. Wright attempts to lead the Court astray by arguing that:

> "Value is quintessentially a matter of opinion, not a statement of fact." Such opinions "are ordinarily not actionable representations of fact." "The law is quite clear that expressions of opinion are not generally treated as representations of fact, and thus are not grounds for a misrepresentation cause of action." "Any future market forecast must be regarded not as fact but as prediction or speculation." Motion 8:3-9, citations omitted.

But the above representations don't speak to *value* they speak to Datarobot's *existing* financial condition and *current* actions, which are actionable. Wright again chastises Vazquez for her candor: "Plaintiff agrees that some of her alleged misrepresentations are not actionable as fraud." Motion 7:8-9. But Wright fails to acknowledge that Vazquez needs only a single actionable misrepresentation to defeat Wright's motion. And, other than his argument that all of his representations were opinions—which is belied by the statements he made—Wright fails to demonstrate that *none* of his representations are factual and actionable. Therefore, his motion should be denied.

Wright also argues that he can't be liable for his misrepresentations because "Plaintiff never alleges that Mr. Wright told Plaintiff directly that 'DataRobot's finances looked solid for an IPO' or that DataRobot was 'fast-tracking' an IPO." Motion 8:13-15. However, in the very next sentence Wright concedes that he may be liable because "Directors and officers of a corporation … may become liable if they directly ordered, authorized or participated in the tortious conduct." *Wyatt v. Union Mortg. Co.*, 24 Cal. 3d 773, 785 (1979). "Personal liability, if otherwise justified, may rest upon a 'conspiracy' among the officers and directors to injure third parties through the corporation." *Id.* That is what Vazquez alleges. Wright issued the directive to recruiters to relay false information about DataRobot's current finances and its present action of fast-tracking an IPO. It is not necessary to show that Wright made the misrepresentation directly to

Vazquez since he directed that the misrepresentations be made by his recruiters and at least one recruiter followed that directive by conveying the misrepresentations to Vazquez. Since that is exactly what Vazquez alleges, Wright eviscerates his own defense.

Even assuming, arguendo, that Wright's statements (about the current financial condition of DataRobot and the fact that it was already fast-tracking an IPO) were merely his opinions, where a party possesses (or holds himself out as possessing) superior knowledge or special information regarding a representation, and the other party is so situated that she may reasonably rely upon such supposed knowledge or information, a representation "will be treated as a representation of fact although if made by any other person it might be regarded as an expression of opinion." *Neu-Visions Sports, Inc. v. Soren/McAdam/Bartells,* 86 Cal.App.4th 303, 308 (2000). *See also*, *Pub. Employees' Ret. Sys. v. Moody's Invs. Serv., Inc.,* 226 Cal. App. 4th 643, 662 (2014) ["when a party possesses or holds itself out as possessing superior knowledge or special information or expertise regarding the subject matter and a plaintiff is so situated that it may reasonably rely on such supposed knowledge, information, or expertise, the defendant's representation may be treated as one of material fact."] It is beyond reasonable dispute that Wright, as CEO, had superior and special knowledge about DataRobot's then-current financial condition and actions pertaining to the current fast-tracking of the IPO compared to Vazquez. Therefore, even if Wright's statements were merely his opinions, they are actionable by Vazquez.

While the current complaint does not identify the person who repeated Wright's misrepresentations to her and where and when the misrepresentations were made to her, Vazquez possesses this information and can amend her complaint to include it.

- Wright instructed recruiters to repeat his misrepresentations (e.g., financial readiness to go IPO and current fast tracking of the IPO) to prospective hires, like Vazquez, during an executive team leadership meeting that was held at the end of March and the beginning of April 2021.

- Christina Bennani-Persechini recruited Vazquez and invariably received Wright's instruction (whether she attended the meeting or not) because she repeated the precise misrepresentations to Vazquez at Wright's direction inducing Vazquez to leave Cisco and join DataRobot.
- Bennani-Persechini made the misrepresentations by phone on April 15 and 15, 2021.

These allegations are sufficient to explain that Wright issued the directive to recruiters and that one of the recruiters followed that directive by conveying the misrepresentations of fact to Vazquez. It is not necessary at this initial pleading stage to prove that Bennani-Peresechini physically attended the meeting at which the misrepresentations were made (although the opposition is silent on this point).  Rather, it is sufficient that Wright directed recruiters to make these misrepresentations, that Bennani-Persechini was a recruiter, and that she followed the directive by conveying the misrepresentation to Vazquez.

### E.  WRIGHT OWED VAZQUEZ A DUTY OF DISCLOSURE DESPITE THE LACK OF A FIDUCIARY RELATIONSHIP

Wright argues that Vazquez's Third Cause of Action for Misrepresentation by Concealment should be dismissed because he did not owe Vazquez a duty of disclosure. Motion 9:12-11:24. Wright again attempts to mislead the Court that "Plaintiff's attempt to establish a fiduciary relationship between herself and Mr. Wright fares no better." Motion 11:7-8. And "as a general matter, the fact of an employer-employee relationship alone is insufficient to create a fiduciary relationship." Motion 11:13-148. However, this is a red herring because Vazquez doesn't allege that Wright's duty to disclose was based upon a fiduciary duty; it's based upon their pre-employment relationship.

Wright continues his misleading narrative by citing *Evenfe v. Esalen Inst.*, No. 15-CV-05457-LHK, 2016 WL 3965167, at *7 (N.D. Cal. July 24, 2016) for the proposition that "as a general matter, the fact of an employer-employee relationship alone is

insufficient to create a fiduciary relationship." Yet Wright admits that "a duty to disclose may arise from the relationship between seller and buyer, employer and prospective employee, doctor and patient, or parties entering into any kind of contractual agreement" (*Los Angeles Memorial Coliseum Com. v. Insomniac, Inc.*, 233 Cal.App.4th 803, 831 (2015)) which supports Vazquez's argument that Wright owed her a duty to disclose, independent of any fiduciary relationship.

Next, Wright argues that "Any employment transaction was between DataRobot and Plaintiff, not between Mr. Wright and Plaintiff." Motion 10:5-6. And that, "none of Mr. Wright's purported statements were made directly to Plaintiff." Motion 10:14-15. However, Wright forgets that "Directors and officers of a corporation are not rendered personally liable for its torts merely because of their official positions, but may become liable if they directly ordered, authorized or participated in the tortious conduct," citing *Wyatt v. Union Mortg. Co., supra,* 24 Cal. 3d 773 at 785. Motion 8:15-18. And "when reviewing a motion to dismiss, a court must 'accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally.'" *Rescuecom Corp. v. Google Inc.,* 562 F.3d 123, 127 (2d Cir. 2009). Thus, for the purposes of this motion, Vazquez's allegations regarding Wright's involvement must be viewed "in the light most favorable to" her. Those allegations show that Wright directly ordered recruiters to convey false and misleading information to DataRobot recruits, including Vazquez, and that his directive was carried out. It is not necessary that Wright made the statement directly to Vazquez where the allegation is that is he personally insisted that the misrepresentation be conveyed to potential recruits like Vazquez through DataRobot's recruiters. Therefore, Wright's motion should be denied.

Wright cites *Bell v. Fed. Home Loan Mortg. Corp.,* No. 11-CV-2514-MMA RBB, 2012 WL 4576584 (S.D. Cal. Oct. 1, 2012) for the proposition that dismissal with prejudice and without leave to amend was proper where the plaintiff failed to plead "some

relationship" with the defendant. Motion 20:19-22. First, Vazquez has alleged a relationship with Wright. He was the CEO of the company she was interested in and directed all recruiters to convey false information about DataRobot's current financial picture and its present fast tracking of an IPO to recruits like Vazquez. The relationship was between Wright, as the leader of the company, and the recruits, like Vazquez, as prospective hires. The fact that the employment relationship was between DataRobot and Vazquez is a technicality. Wright used his position of power to wrongfully influence Vazquez's decision to join the company. The fact that Wright relied upon an intermediary recruiter to convey his misrepresentations should not insulate him from liability for his misconduct. Second, Wright fails to inform the Court that *Bell* is distinguishable because there "Plaintiffs had three opportunities to allege viable claims against [the defendant]." *Id.* at *6. Since Vazquez has not been granted such opportunities, *Bell* does not support Wright's argument that Vazquez's claim should be dismissed without leave to amend, even if she inadequately pled their relationship.

In *LiMandri v. Judkins*, 52 Cal. App. 4th 326 (1997), a borrower sued its lender over a loan transaction, alleging that the lender owed the borrower a duty of disclosure. The court ruled that even without a fiduciary relationship, parties to a transaction, such as an employment relationship, have a duty to disclose information not known to the other party. "**A duty to disclose may arise from the relationship between** seller and buyer, **employer and prospective employee**, doctor and patient, or parties entering into any kind of contractual agreement. (Civ.Code, § 1572, subd. 3.)" *Id.* at 337, emphasis added.

Wright argues that he can't be liable for concealment because Civil Code section 1572 "applies only to fraud 'committed by a party to the contract." Motion 11:1. But, as noted above, Wright omits a key phrase that directly applies to this case. Section 1572 actually applies to acts committed by a party to the contract "*or with his connivance*." Emphasis added. That phrase is critical because Vazquez alleges that the fraud was committed with Wright's connivance. "Connivance is an agreement or consent, directly

or indirectly given, that something unlawful shall be done by another." *Oakland Bank of Sav. v. Wilcox* 60 Cal. 126, 137 (1882).  That is exactly what happened here.  Wright instructed the recruiters to convey unlawful misrepresentations to potential candidates like Vazquez and she relied on the connivance to her detriment.  To the extent Section 1572 is not alleged in the complaint, it can be amended these facts.

Wright also joins Datarobot's motion to dismiss which argues that publicly available information cannot form the basis of a concealment claim, citing *Magpali v. Farmers Group, Inc.,* 48 Cal. App. 4th 471, 482 (1996). Datarobot motion. 14:2-8. However, *Magpali* is distinguishable because the documents weren't merely accessible there, the plaintiff "was expected to study it as part of his training." *Ibid.* That is not the case here. Vazquez was not expected to review Datarobot's pending lawsuits or other evidence regarding its positioning for an IPO as part of her training. *Magpali* does not support Wright's argument that the mere existence of information in the public domain precludes a prospective hire from relying upon the employer's representations. The lack of any requirement to investigate contractual representations is also supported by *Carpenter v. Hamilton, supra,* 18 Cal.App.2d 69: "Plaintiffs had a right to rely upon the representations made to them concerning matters of fact which were unknown to them, without making any inquiry concerning the truth thereof." *Carpenter* holds that a party like Vazquez has the right to rely upon factual representations made to them, "without making any inquiry concerning the truth thereof." Therefore, Vazquez did not lose her right to sue Wright and Datarobot over their misrepresentations just because she didn't search for and read everything in the public domain prior to accepting her job with DataRobot.

     F.     **VAZQUEZ ALLEGED ACTIONABLE NEGLIGENT MISREPRESENTATION**

Wright argues that Vazquez's Fourth Cause of Action for Negligent Misrepresentation "is predicated on the same inactionable opinions as her intentional

misrepresentation claim, and it likewise fails." Motion 14:26-15:1. However, Vazquez addressed Wright's arguments above and reincorporates those arguments here. Plaintiff's claim for negligent misrepresentation is not predicated on promises of future performance. It is predicated on the current misrepresentations of fact that its "finances looked solid for an IPO" and that DataRobot was currently "fast tracking" the IPO. Complaint, ¶¶ 18(a), (b). Wright reasonably should have known that these representations were not true at the time he made them and directed the recruiters to repeat them. These were not false promises to perform in the future, they were ascertainable facts that Plaintiff claims were false when made.

### G. VAZQUEZ AGREES THAT HER INTENTIONAL INFLICITION OF EMOTIONAL DISTRESS CLAIM AGAINST WRIGHT SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND

Plaintiff agrees with Wright that her Ninth Cause of Action for Intentional Infliction of Emotional Distress should be dismissed without leave to amend. Plaintiff cannot amend the claim to allege additional conduct by Wright that supports the claim. Plaintiff reserves her right to argue that Wright's misconduct is part of her overall claim for Intentional Infliction of Emotional Distress against DataRobot. Plaintiff also reserves her argument that the Intentional Infliction of Emotional Distress claim alleged against DataRobot is not preempted by the workers' compensation exclusivity rule.

### H. VAZQUEZ HAS SUFFICIENTLY PLED SUFFICIENT FACTS TO SUPPORT HER REQUEST FOR PUNITIVE DAMAGES

Wright argues that "Plaintiff has utterly failed to allege any specific corresponding facts showing that Wright acted maliciously, oppressively, or fraudulently." Motion 18:25-19:1. However, merely reading Vazquez's Complaint belies that argument. Paragraphs 17-19 of Vazquez's Complaint allege detailed facts sufficient to support her request for punitive damages. *See* Cal. Civ. Code § 3294(a) (punitive damages are recoverable where the defendant is guilty of fraud). Specifically, her surviving claims for

intentional misrepresentation and misrepresentation by concealment sound in fraud and entitle her to seek punitive damages from Wright. *Id.* § 3294(c)(3).

## I. IF THE COURT FINDS THAT ANY OF VAZQUEZ'S CAUSES OF ACTION ARE INSUFFICIENTLY PLED, SHE IS ENTITLED TO LEAVE TO AMEND THEM

"It is black-letter law that a district court must give plaintiffs at least one chance to amend a deficient complaint, absent a clear showing that amendment would be futile." *National Council of La Raza v. Cegavske* 800 F.3d 1032, 1041 (9th Cir. 2015), citing *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir.2003) ["Dismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment."] As the U.S. Supreme Court expressly stated, "Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Supreme Court explained that:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

There is no evidence of undue delay, bad faith or dilatory motive on Vazquez's part nor undue prejudice to Wright. This is Vazquez's first request for leave to amend. Nor would amendment be futile because Wright fails to cite any requirement of any cause of action that Vazquez cannot amend with sufficient particularity. Therefore, if this Court finds that any of Vazquez's claims (other than her First Cause of Action for Fraud in Inducement and her Ninth Cause of Action for Intentional Infliction of Emotional Distress

as to Wright only) is insufficiently pled, it should follow the U.S. Supreme Court's teaching and grant Vazquez leave to amend her Complaint to address the infirmity.

### III.   CONCLUSION

For all of the above reasons, this honorable Court should deny Wright's Motion. Alternatively, if the Court agrees with any of his arguments, Vazquez respectfully requests leave to amend her complaint to address the infirmities.

DATED: February 3, 2023                    **WINER, BURRITT & SCOTT, LLP**

By: _____
Matthew P. Vandall, Esq.
Attorneys for Plaintiff
RAQUEL VAZQUEZ

*Raquel Vazquez vs. DataRobot, Inc., et al.*
*USDC Northern District of California Case No. 3:22-cv-07619-LB*

# **PROOF OF SERVICE**

I, the undersigned, declare that I am employed in the County of Alameda, California. My business address is 1901 Harrison Street, Suite 1100, Oakland, California 94612. I am over the age of eighteen (18) years and am not a party to the within action.

On the date below, I served the following documents:

- **PLAINTIFF RAQUEL VAZQUEZ'S OPPOSITION TO DEFENDANT DAN WRIGHT'S MOTION TO DISMISS**

on the parties listed below, by placing a true and correct copy thereof addressed as follows:

| | |
|---|---|
| ANDREW R. LIVINGSTON, ESQ.<br>alivingston@orrick.com<br>RACHEL CAPLER, ESQ.<br>rcapler@orrick.com<br>ORRICK, HERRINGTON & SUTCLIFFE LLP<br>The Orrick Building<br>405 Howard Street<br>San Francisco, CA 94105-2669<br>Telephone: +1 415 773 5700<br>Facsimile: +1 415 773 5759<br><br>***Counsel for Defendant***<br>***DataRobot, Inc.*** | MOE FODEMAN, ESQ.<br>WILSON SONSINI GOODRICH & ROSATI<br>1301 Avenue of the Americas, 40th Floor<br>New York, NY 10019<br>direct: 212.497.7704 \| mobile: 646.208.4387<br>e-mail: mfodeman@wsgr.com<br><br>ULRICO S. ROSALES, ESQ.<br>WILSON SONSINI GOODRICH & ROSATI<br>650 Page Mill Road<br>Palo Alto, CA 94304<br>Tel: 650.493.9300; Fax: 650.565.5100<br>Email: rrosales@wsgr.com<br><br>***Counsel for Defendant***<br>***Dan Wright*** |

☒   BY ELECTRONIC TRANSMISSION - I caused the documents to be sent to the persons at the e-mail addresses listed above on the dates and at the times stated thereon. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: February 3, 2023

*Linda M. Carcamo-Rios*
_____
Linda M. Carcamo-Rios