ANDREW R. LIVINGSTON (SBN 148646)
alivingston@orrick.com
RACHEL CAPLER (SBN 307582)
rcapler@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:    +1 415 773 5700
Facsimile:    +1 415 773 5759

Attorneys for Defendant
DATAROBOT, INC.


MATTHEW P. VANDALL (SBN 196962)
matthew@wmlawyers.com
JESSICA L. HART (SBN 331441)
jessica@wmlawyers.com
WINER, BURRITT & SCOTT, LLP
1901 Harrison Street
Oakland, CA 94612
Telephone:    +1 510 543 1000

Attorneys for Plaintiff
RAQUEL VAZQUEZ


*Additional Counsel Listed on Signature Page*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAQUEL VAZQUEZ,<br><br>          Plaintiff,<br><br>     v.<br><br>DATAROBOT, INC.; DAN WRIGHT; and DOES 1 through 20, inclusive,<br><br>          Defendants. | Case No. 3:22-cv-07619-LB<br><br>**JOINT CASE MANAGEMENT CONFERENCE STATEMENT AND RULE 26(f) REPORT** |

The Parties submit this Joint Case Management Statement pursuant to Civil L.R. 16-9, Federal Rules of Civil Procedure 26(f), this Court's Standing Order, the Standing Order for All Judges of the Northern District of California - Contents of Joint Case Management Statement, and the Court's Order Granting [23] Stipulation re Request Changing Time (Dkt. No. 25).

1. **Jurisdiction and Service**

**Plaintiff's Position:** There are no unserved parties.  This Court, however, lacks original jurisdiction over this state court action because Plaintiff and one or more of the Defendants are from California which defeats diversity jurisdiction. The Court heard argument on Plaintiff's Motion to Remand on March 9, 2023, and has yet to issue a ruling.

**Defendants' Position:** There are no unserved parties.  This Court has original jurisdiction of the state court action based on diversity of citizenship pursuant to 28 U.S.C. section 1332(a). Pursuant to 28 U.S.C. section 1441(a) and (b), on December 2, 2022, DataRobot removed Plaintiff's state court action to this Court because it is a civil action between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs, as set forth below.  Venue is proper in this court pursuant to 28 U.S.C. sections 84(a), 1391, 1446, and Civ. L.R. 3-2(d) and is founded on the fact that this employment action was removed from the Superior Court of California for the County of San Francisco.  Plaintiff filed a Motion to Remand, which the Court heard on March 9, 2023.  The Court has not issued a ruling on the Motion.

2. **Facts**

**Plaintiff's Position:** Plaintiff is a single mother, over the age of 40 and of Latin Heritage. She is a retired combat veteran from the United States Air Force with a residual PTSD disability. At all relevant times, Plaintiff worked remotely with the San Francisco office locations of Defendant DataRobot.  Defendant Daniel Wright ("Wright") was the CEO of DataRobot during, and immediately prior to, Plaintiff's employment there and was involved in her fraudulent recruitment.  Plaintiff was actively recruited by senior executive leaders and internal recruiters at DataRobot who worked under the direction and control of DataRobot's then Chief Executive Officer, Wright.

1   During the March-April 2021 time frame, when Plaintiff was being recruited to DataRobot, Wright made several false statements about the current financial status of DataRobot and the fact that it was currently fast-tracking an IPO.  He directed internal recruiters to convey these facts, amongst others, to recruits like Plaintiff in order to falsely induce them to join DataRobot.  Plaintiff has alleged claims of (1) Intentional Misrepresentation; (2) Misrepresentation by Concealment; and (3) Negligent Misrepresentation against both Defendants.  These claims are currently the subject of the various Motions to Dismiss which have not yet been ruled upon.

Plaintiff also asserts claims of Discrimination under California Government Code section 12940(a); Failure to Prevent Discrimination pursuant to California Government Code section 12940(k); Wrongful Termination in Violation of Public Policy; and Whistleblower Retaliation under California Labor Code section 1102.5 in connection with the May 13, 2022 termination of her DataRobot employment and how she was treated while working at DataRobot.  Plaintiff alleges that she was treated differently based on her various protected characteristics and retaliated against when she opposed fraudulent practices at DataRobot.

Plaintiff is seeking damages for past and future wage losses, bonuses and other earnings, damages for physical and mental pain and suffering as well as emotional distress, punitive damages, reasonable attorneys' fees, costs of suit, interest, and such other relief as the Court finds proper.

**DataRobot's Position:** DataRobot denies each and every one of Plaintiff's claims.  DataRobot denies that it made any intentional or negligent misrepresentations to Plaintiff, and denies that it fraudulently concealed information from Plaintiff.  DataRobot denies that it discriminated against Plaintiff, failed to prevent discrimination against Plaintiff, retaliated against Plaintiff, or wrongfully terminated Plaintiff when she was selected for layoff as part of a 70-person reduction in force.  DataRobot also denies it caused Plaintiff any damages and/or emotional distress, or otherwise wrongfully treated Plaintiff in any way.  DataRobot maintains that it is not liable to Plaintiff in any amount.

//

1    **Dan Wright's Position:** Dan Wright denies each and every one of Plaintiff's claims

2 against him.  Mr. Wright denies that he made any intentional or negligent misrepresentations to

3 Plaintiff and denies that he fraudulently concealed information from Plaintiff.  Mr. Wright also

4 denies that he caused Plaintiff any damages and/or emotional distress, or otherwise wrongfully

5 treated Plaintiff in any way.  Mr. Wright maintains that he is not liable to Plaintiff in any amount.

6    **3.    Legal Issues**

7    **Plaintiff's Position:**

8        a)    Whether DataRobot and/or Wright made intentional and fraudulent

9 misrepresentations to Plaintiff during her recruitment.

10       b)    Whether DataRobot and/or Wright fraudulently concealed information from

11 Plaintiff during her recruitment.

12       c)    Whether DataRobot and/or Wright made negligent and fraudulent representations

13 to Plaintiff during her recruitment.

14       d)    Whether DataRobot discriminated against Plaintiff on the basis of her gender, age,

15 race/ethnicity, disability, status as a single mother, and/or veteran status in violation of the Fair

16 Employment and Housing Act ("FEHA").

17       e)    Whether DataRobot failed to prevent discrimination in violation of the FEHA.

18       f)    Whether DataRobot wrongfully terminated Plaintiff in violation of California

19 public policies against discrimination and retaliation.

20       g)    Whether DataRobot retaliated against Plaintiff for reporting and/or resisting

21 fraudulent activities within DataRobot in violation of Labor Code section 1102.5.

22       h)    Whether DataRobot intentionally inflicted emotional distress upon Plaintiff during

23 her DataRobot employment.

24       i)    Whether Plaintiff is entitled to compensatory, economic, special or general

25 damages.

26       j)    Whether Plaintiff is entitled to punitive damages.

27       k)    Whether Plaintiff is entitled to costs, expenses, and reasonable attorney's fees if

28 she is deemed the prevailing party in this action.

1        l)      Whether Plaintiff is entitled to prejudgment interest.

2        **DataRobot's Position:** The disputed points of law are as follows:

3        a)      Whether DataRobot made intentional and fraudulent misrepresentations to
4   Plaintiff.

5        b)      Whether DataRobot fraudulently concealed information from Plaintiff.

6        c)      Whether DataRobot made negligent and fraudulent misrepresentations to Plaintiff.

7        d)      Whether DataRobot discriminated against Plaintiff based on gender, age,
8   race/ethnicity, disability, and/or veteran status in violation of the FEHA.

9        e)      Whether DataRobot failed to prevent discrimination in violation of the FEHA.

10       f)      Whether DataRobot wrongfully terminate Plaintiff in violation of California's
11  public policy.

12       g)      Whether DataRobot intentionally inflicted emotional distress upon Plaintiff.

13       h)      Whether DataRobot retaliated against Plaintiff in violation of Labor Code 1102.5.

14       i)      Whether Plaintiff is entitled to costs, expenses, and reasonable attorneys' fees.

15       j)      Whether Plaintiff is entitled to punitive damages.

16       k)      Whether Plaintiff is entitled to compensatory, economic, general, or special
17  damages.

18       l)      Whether Plaintiff is entitled to prejudgment interest.

19       **Dan Wright's Position:** The disputed points of law are as follows:

20       a)      Whether Mr. Wright made intentional or fraudulent misrepresentations to Plaintiff.

21       b)      Whether Mr. Wright fraudulently concealed information from Plaintiff.

22       c)      Whether Mr. Wright made negligent and fraudulent misrepresentations to Plaintiff.

23       d)      Whether Plaintiff is entitled to costs, expenses, and reasonable attorneys' fees.

24       e)      Whether Plaintiff is entitled to punitive damages.

25       f)      Whether Plaintiff is entitled to compensatory, economic, general, or special
26  damages.

27       g)      Whether Plaintiff is entitled to prejudgment interest.

28

Mr. Wright does not include whether he intentionally inflicted emotional distress upon Plaintiff because Plaintiff has made clear that she is not pursuing a claim for intentional infliction of emotional distress against Mr. Wright.

### 4. Motions

**Plaintiff's Position:** Other than the pending Motion To Remand, Plaintiff foresees only filing discovery and pre-trial motions as needed.

**Defendants' Position:** Defendant DataRobot filed a partial Motion to Dismiss, and Defendant Mr. Wright filed a Motion to Dismiss as to all claims against him, which the Court heard on March 9, 2023.  The Court has not yet issued a ruling on either Motion.  Defendants, or DataRobot assuming Mr. Wright is dismissed from the case, anticipate moving for summary judgment and/or adjudication.  Defendants, or DataRobot assuming Mr. Wright is dismissed from the case, will also file discovery and pre-trial motions as necessary.

### 5. Amendment of Pleadings

**Plaintiff's Position:** If the Court grants Plaintiff leave to amend any of her claims she will do so.  Plaintiff may file a first amended complaint depending on the Court's ruling on the Motions to Dismiss.

**Defendants' Position:** Defendants will oppose any Motions for Leave to Amend to the extent appropriate and will file responsive pleadings as appropriate.

### 6. Evidence Preservation

The Parties are unaware of any evidence preservation issues in this regard at this time, however, they agree to make efforts to preserve all discoverable information, regardless of the format in which it is kept (email, database, paper file, etc.).

### 7. Disclosures

The Parties will comply with the disclosure requirements of Order 71.  Pursuant to the Parties' Stipulation, which the Court entered on December 22, 2022, each party will serve their Order 71 disclosures within 30 days after the Court rules on Defendants' Motions to Dismiss, and at such time will produce documents identified by Order 71.  (*See* Dkt. No. 25.)  Defendants may request an additional extension of time to comply with Order 71.  Plaintiff will not oppose any

1 reasonable request by Defendants, but will require any additional extensions of time be mutual.

**8.     Discovery**

No discovery has occurred to date.

**Phased Discovery:** Defendants contend that phased discovery is appropriate with respect to any discovery of any Defendants' financial condition, including on the issues of any potential initial public offering. Plaintiff opposes phased discovery or requests that the specific phases of discovery be identified in any scheduling order issued by the Court.

**Types of Discovery:** The Parties anticipate utilizing the following methods of discovery: interrogatories, requests for production, and requests for admission (as appropriate), depositions, third-party subpoenas, and expert discovery. The Parties reserve the right to use additional methods of discovery as warranted.

**Limitations on Discovery:** The Parties agree that any necessary modifications to the limitations on discovery set forth in the Federal Rules of Civil Procedure will likely depend on which, and to what extent, issues are resolved during the course of litigation, including through Defendants' Motions to Dismiss. The Parties reserve their rights to seek leave to modify the limitations should it become reasonably necessary to do so. For instance, the Parties are currently discussing whether to waive the seven-hour deposition limit in two specific instances: (1) Plaintiff's deposition; and (2) the deposition of DataRobot's Person Most Knowledgeable on specified topics. Plaintiff contends that any such enlargement of time be limited to no more than 14 hours per these two identified depositions, and other depositions are capable of completion within the seven-hour deposition limit. Decisions on this as well as similar discovery issues may be more appropriate after the Court rules on the Motion to Remand and the Motions to Dismiss.

**Confidentiality/Protective Order:** Defendants will seek a Protective Order governing the disclosure and use of confidential and proprietary information in connection with this matter. Defendants will meet-and-confer with Plaintiff in the hope of presenting a stipulated proposed order.

**9.     Class Actions**

Not applicable.

**10.** **Related Cases**

There are currently no related cases.

**11.** **Relief**

**Plaintiff's Position:** Plaintiff seeks the following damages in her prayer for relief: (1) Special Damages according to proof; (2) General Damages for physical and mental pain and suffering; (3) Punitive Damages; (4) Past and future lost wages, bonuses and other earnings (e.g, stock options), in a sum to be proved at trial; (5) Reasonable attorneys' fees and costs; (6) interest on all sums; (7) costs of suit; (8) declaratory and/or injunctive relief; and (9) such other relief as the Court finds proper.  Despite reasonable mitigation efforts, Plaintiff has not found a new job since her May 13, 2022 termination and has been accruing wage losses as a result of that decision. Past and future wages losses will be calculated according to proof offset by any income received that is not from a collateral source.  Plaintiff will also seek lost future wages at the time of trial. Plaintiff will seek emotional distress damages in an amount to be set by the jury as well as damages for past and future medical expenses.  Punitive damages will also be sought.

**Defendants' Position:** Defendants deny that Plaintiff is entitled to any damages and/or relief.  To the extent that any damages are awarded to Plaintiff, such damages are subject to caps, offsets (including mitigation) and other limitations available under applicable law.  Defendants do not anticipate pursuing counterclaims against Plaintiff at this time, but reserve the right to do so.

**12.** **Settlement and ADR**

**Plaintiff:** Plaintiff is willing to pursue private mediation with Defendants.

**Defendants:** Defendants are willing to consider ADR options such as private mediation.

**13.** **Other References**

The Parties do not believe this case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**14.** **Narrowing of Issues**

The Parties will work to narrow issues by agreement and/or motion after discovery has progressed.  The Parties will also seek to stipulate to facts not reasonably in dispute.  At a later

1  time, as discovery progresses, the Parties will meet and confer to discuss limiting the number of
2  asserted claims and defenses.

3        **Plaintiff's Position:** Plaintiff agrees to negotiate in good faith with Defendants and to
4  oppose any motion to bifurcate that Defendants intend to file.

5        **Defendants' Position:** Defendants intend to move to bifurcate the liability and punitive
6  damages phases of trial.  Cal. Civ. Code §§ 3294, 3295.

7        **15.**    **Expedited Trial Procedure**

8        The Parties do not believe this case can be handled under the Expedited Trial Procedure of
9  General Order 64, Attachment A.

10        **16.**    **Scheduling**

11        The Parties agree that the appropriate case schedule will depend on the Court's rulings on
12  Defendants' Motions to Dismiss, and any potential amendments to the pleadings.  The Parties
13  reserve their rights to seek leave to modify the case schedule in this action should it become
14  reasonably necessary to do so.

15        The Parties propose the following schedule based on the assumption that the Court will
16  issue its rulings on the outstanding motions by mid-April 2023:

| Event | Proposed Deadlines |
| --- | --- |
| **Designation of Experts** | December 15, 2023 |
| **Designation of Rebuttal Experts** | January 15, 2024 |
| **Fact and Expert Discovery Cutoff** | February 15, 2024 |
| **Dispositive and *Daubert* Motion Filing Deadline** | March 15, 2024 |
| **Final Pre-Trial Conference** | July 11, 2024 |
| **Trial** | August 12, 2024 |

      **17.**    **Trial**

Plaintiff demands a jury trial.  The Parties agree that the length of trial will depend on which, and to what extent, issues are resolved during the course of litigation, but anticipate an 8-10-day trial.

**18. Disclosure of Non-Party Interested Entities or Persons**

Defendants filed their Certificates of Interested Entities or Persons pursuant to Civil L.R. 3-15. (*See* Dkt. Nos. 5, 32). There are no other known non-party interested entities or persons.

**19. Professional Conduct**

All attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**20. Other**

There are no other matters that the Parties believe should be addressed at this time.

Dated: April 6, 2023  ORRICK, HERRINGTON & SUTCLIFFE LLP

By: /s/
Andrew R. Livingston
Rachel Capler
Attorneys for Defendant DataRobot, Inc.

Dated: April 6, 2023  WINER, BURRITT & SCOTT, LLP

By: /s/
Matthew P. Vandall
Jessica L. Hart
Attorneys for Plaintiff Raquel Vazquez

Dated: April 6, 2023  WILSON SONSINI GOODRICH & ROSATI

By: /s/
Marina C. Tsatalis (SBN 178897)
mtsatalis@wsgr.com
Jessica Lonergan (admitted *pro hac vice*)
jlonergan@wsgr.com
1301 Avenue Of The Americas, 39th Floor
New York, NY 10019-6090
Tel: 212-999-5800
Attorneys for Defendant Dan Wright

- 9 -

JOINT CASE MANAGEMENT CONFERENCE STATEMENT AND RULE 26(F) REPORT [3:22-CV-07619-LB]

**CASE MANAGEMENT ORDER**

The above JOINT CASE MANAGEMENT STATEMENT & PROPOSED ORDER is approved as the Case Management Order for this case and all parties shall comply with its provisions. [In addition, the Court makes the further orders stated below:]

IT IS SO ORDERED.

Dated: _____, 2023

_____
Honorable Laurel Beeler
United States Magistrate Judge

**Attestation re Electronic Signatures**

I, ANDREW R. LIVINGSTON, attest pursuant to Northern District Local Rule 5-1(h)(3) that all other signatories to this document, on whose behalf this filing is submitted, concur in the filing's content and have authorized this filing. I declare under penalty of perjury that the foregoing is true and correct.

Dated:  April 6, 2023

/s/
ANDREW R. LIVINGSTON
Attorneys for Defendant
DATAROBOT, INC.